## ARTHUR H. AMES V. ABSALOM AMES ET AL.

FILED JANUARY 3, 1906.   No. 14,046.

1. **Petition: PRAYER.** Where a petition filed in the district court states facts sufficient to entitle plaintiff to both legal and equitable relief, and prays relief, a part of which only can be had at law, but all of which can be had in equity, the pleader will be held to have intended thereby to invoke the chancery, and not the common law, powers of the court.

2. ————: **ELECTION.** After filing a petition of that character, the plaintiff may elect to proceed at law, but to do so he should manifest his election by some unequivocal act which commits him to the theory that he has abandoned his claim to equitable relief.

3. **A** mere demand for a jury to try the issues of fact is not such an act as would warrant the court in assuming that the plaintiff has abandoned his claim to equitable relief, because, where the relief sought is equitable, a court in its discretion may submit the issues of fact to a jury.

4. **Deed: SANITY OF GRANTOR: EVIDENCE.** In a suit by one of the representatives of a deceased person to set aside a conveyance made by the deceased on the ground that he was mentally incompetent to execute such conveyance, an answer filed by the deceased in a suit pending in his lifetime, in which he averred that at the time of executing the contract then in suit he was suffering from mental and physical prostration, and *non compos mentis*, is inadmissible in evidence on the question of the mental capacity of the grantor.

5. **Evidence.** On the trial of the cause, a nonexpert witness was asked to state whether the grantor was able to converse intelligently on any particular subject for any length of time. *Held*, That, the witness having given the conversations and described the conduct of the grantor, it was for the court to draw inferences therefrom as to his inability to converse intelligently.

6. ————. The fact that the attending physician prescribed certain drugs for a patient which are used in the treatment of mental disorders is not competent evidence tending to establish the insanity of the patient.

7. ————. The opinion of an expert witness on the question of insanity, which assumes the point in dispute, is valueless.

ERROR to the district court for Washington county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Brome & Burnett* and *E. B. Carrigan,* for plaintiff in error.

*Francis A. Brogan* and *Herman Aye, contra.*

ALBERT, C.

The questions raised in this court necessitate an examination of the petition at length. It is as follows: "Comes now the plaintiff, Arthur H. Ames, and for his cause of action against the defendants, Absalom Ames and George Ames, respectfully shows to the court: First. That Joseph P. Ames departed this life on the 14th day of April, 1901, in Washington county, Nebraska; that said Joseph P. Ames died intestate, leaving as his sole surviving heirs at law three sons, to wit, Arthur H. Ames, plaintiff herein, and Absalom Ames and George Ames, defendants herein. Second. That on and prior to the 8th day of March, in the year 1900, said Joseph P. Ames was, and for many years had been, the owner in fee simple of the following described lands and tenements, situated in said Washington county, Nebraska, to wit: (Here follows a description of the several parcels of land) all in Washington county, Nebraska. On said 8th day of March, 1900, said Joseph P. Ames made a pretended conveyance of said real estate to the defendants herein, Absalom Ames and George Ames, said conveyance being executed on the date aforesaid, but not delivered to the grantees therein named, the aforesaid defendants, during the lifetime of said Joseph P. Ames. That after the death of said Joseph P. Ames, and on or about the 1st day of May, 1901, the defendants herein obtained possession of said conveyance and caused the same to be recorded in the office of the county clerk of said Washington county, Nebraska, in book 34, p. 423, of the deed records of said county. Plaintiff further says that at the time said Joseph P. Ames signed said pretended deed he was wholly insane and incapable of executing or making any contract or conveyance of any nature or kind whatso-

ever; that said pretended conveyance was wholly without consideration, and the signature of said Joseph P. Ames thereto was procured by said defendants without anything of value being paid therefor, and with the intent and purpose on the part of said defendants to cheat and defraud this plaintiff out of his prospective interests in said real estate as the heir at law of said Joseph P. Ames. That said conveyance was not delivered to said defendants, or either thereof, and was not intended to become operative or to pass the title to said real estate at any time during the lifetime of said Joseph P. Ames; that said Joseph P. Ames was the owner of said real estate and in possession thereof at the time of his death; that immediately after the death of said Joseph P. Ames said defendants jointly took exclusive possession of said real estate, and ever since said date have, and now are, converting to their own use the rents and profits thereof; that said estate at the time of the death of said Joseph P. Ames, and at all times thereafter, has had, and now has, a rental value of $1,500 a year; that this plaintiff is the owner and entitled to possession of an undivided one-third of said real estate, and all thereof, as one of the heirs at law of said Joseph P. Ames; that plaintiff is the owner and entitled to recover of and from said defendants one-third of the value of the use of said real estate since the death of said Joseph P. Ames, amounting in the aggregate to the sum of $1,500; that the defendants have at all times, and do now, wrongfully keep this plaintiff out of the possession, use and enjoyment of said real estate, and the rents and profits thereof, and have refused, and do refuse, to account to this plaintiff for his share of such rents and profits and the value of the use of said property.

"Wherefore plaintiff prays that the aforesaid conveyance from said Joseph P. Ames to said defendants be canceled and held for naught; that plaintiff be adjudged to be the absolute owner of said undivided one-third of said real estate, and all thereof, and that plaintiff have and recover from defendants, in addition thereto, the sum of $1,500 on

account of rents and profits and the value of the use of said real estate now due from the defendants to the plaintiff, and such other and further relief as justice and equity may require."

An extended examination of the answers is not necessary to an understanding of the questions upon which the case now turns, and it will suffice to say that the principal issue raised is as to the mental capacity of Joseph P. Ames to execute the deed. After the answers were filed, the plaintiff asked leave to amend the prayer of his petition by adding thereto the following: "And that the plaintiff have and recover from the defendants the possession of an undivided one-third of said real estate." The court refused to permit the amendment. Afterwards, and before the cause was reached for trial, and again when it was reached, the plaintiff asked for a trial of the issues of fact to a jury, but the request was refused. A trial to the court without a jury resulted in a finding and decree for the defendants. The plaintiff brings the case here on error.

It is insisted on behalf of the plaintiff that the petition states a cause of action in ejectment, and that the court erred in refusing to submit the issues of fact to a jury. It may be conceded that the petition states facts sufficient to constitute a cause of action in ejectment. But it also states facts sufficient to entitle the plaintiff to a cancelation of the deed from Joseph P. Ames to the defendants, and other matters of equitable cognizance. The prayer shows that the plaintiff sought equitable relief, and that a part of the relief sought was such as the court could grant only in the exercise of its chancery powers. On the other hand, while a part of the relief sought might have been had in an action at law, no relief is prayed that the court, in the exercise of its plenary powers as a court of equity, might not have granted. And this would be true, even had the amendment to the prayer for relief been allowed, because, when a court of equity acquires jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all matters at issue in the case.

1 Pomeroy, Equity Jurisprudence (3d ed.), sec. 181. It would seem reasonable to hold that, where a party files a petition in the district court which states facts sufficient to entitle him to both legal and equitable relief, and prays relief, a part of which only can be had at law, but all of which may be had in equity, he intends thereby to invoke the chancery, and not the common law, powers of the court. There is no doubt that, after filing a petition of that kind, the plaintiff might elect to proceed at law, but he should manifest his election by some unequivocal act which would commit him to the theory that he had abandoned his claim to equitable relief. Here the only acts relied on as showing such election are the two requests for the submission of the questions of fact to a jury. But it is not an uncommon practice for courts, in the trial of purely equitable issues, to submit such issues to a jury. But a jury cannot be demanded as a matter of right. *Sharmer v. McIntosh,* 43 Neb. 509; *Omaha Fire Ins. Co. v. Thompson,* 50 Neb. 580; *Alter v. Bank of Stockham,* 53 Neb. 223; *Hotaling v. Tecumseh Nat. Bank,* 55 Neb. 5. There was nothing, therefore, in the demand for a jury inconsistent with the theory that the plaintiff was prosecuting a suit in equity, and nothing on the face of the record which would have prevented him, had a jury trial been allowed which resulted in a judgment in his favor, from insisting that it was a suit for equitable relief, and not in ejectment, and that a second trial thereof as of course could not be had. It seems to us the court very properly regarded and tried the cause as a suit in equity.

The plaintiff, in support of his allegations as to the mental incapacity of Joseph P. Ames, offered in evidence a verified answer which Joseph P. Ames had filed in an action brought against him in his lifetime. The action was upon a contract, and as a defense thereto Joseph P. Ames alleged in his answer that in 1883, at the time of the execution of said contract, he "was suffering from mental and physical prostration, and was *non compos mentis.*" Complaint is now made of the exclusion of this evidence.

While the declarations of a person as to his present condition are frequently admitted in evidence, where it appears that such statements are undesigned and spontaneous, we know of no authority, and are satisfied that there is none, for admitting evidence of a person's declarations as to his past condition, or where, as it clearly appears in this case, the declarations were not spontaneous but studied.

The plaintiff produced a nonexpert witness, who testified fully as to his acquaintance with Joseph P. Ames, the defendants' grantor, and conversations had with him, his conduct, etc., and that from his conduct and conversations, as detailed by the witness, he believed that his mind was weak. He also testified that his reason for thinking his mind was weak was by his talk; that, "if you talked to him about any little thing, he would probably say a word or two, and then his mind would wander off on to something else." The plaintiff asked this witness these questions: "Was he able to converse intelligently on any particular subject for any length of time?" "You may state in what manner Mr. Ames carried on conversations with you while you were there." Objections were interposed and the answers to the questions excluded. We do not think the exclusion of these answers, or either of them, constitutes reversible error. The first would have been a mere opinion as to the ability of the party to converse intelligently. The witness gave the conversations and described the conduct of Mr. Ames, and it was for the court to draw the inferences therefrom as to his ability to converse intelligently. The second was substantially answered by the witness before he left the stand.

The deposition of a physician, who, in his professional capacity, had treated Joseph P. Ames, was taken. His evidence shows that he had prescribed for him, and that his prescription was in writing. He was then asked: "Will you now state what that prescription was?" Objections were interposed and the evidence excluded, and its exclusion is now assigned as error. We have not been shown, nor are we able to discover, the materiality of the

proffered evidence. Assuming that the prescription in some way indicated that the patient was under treatment for some disease which affected his mind, it would merely reflect the opinion entertained by the prescribing physician, at the time the prescription was given, that the patient was suffering from such disease. If, instead of such prescription directed to a pharmacist, the physician had written a letter, in which he expressed the opinion that the patient was insane, will it be claimed that such letter would be admissible in evidence on the question of the patient's sanity? The prescription certainly stands on no better footing. Besides, the prescription was in writing, and there was no attempt to lay the foundation for the introduction of secondary evidence as to its contents. Other reasons might be given for the exclusion of this evidence, but the foregoing appears sufficient.

It is urged that the only reasonable inference from the evidence is that Joseph P. Ames was mentally incompetent to execute the conveyance. We do not think so. The evidence shows that, at the date of the conveyance, he was about 65 years old and in failing health. That his mental faculties had been somewhat weakened may be conceded, but the evidence falls far short of showing that they were impaired to the extent that he did not understand in a reasonable manner the nature and effect of the conveyance, or that he did not execute it understandingly and with full knowledge of its purpose and effect.

Considerable stress is laid on the opinion of an expert witness to the effect that, on the facts assumed in the hypothetical question, the patient was insane. But an analysis of his testimony shows that one of the facts assumed by him, and upon which he based his opinion, was that the patient was mentally incompetent to transact his ordinary business. It is obvious that this renders the opinion valueless, because it is an assumption of the very point in dispute. The opinion of the expert reduced to its simplest form amounts to this, that if the patient was

insane he was insane—a deduction which the ordinary mind would readily make without the aid of an expert.

We are satisfied from a careful study of the evidence that, even were the case here on appeal and for trial *de novo,* we should be compelled to reach the same conclusion as that reached by the trial court. We discover no reversible error in the record, and therefore recommend that the decree be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.