FARMERS COOPERATIVE ASSOCIATION, A CORPORATION, OF FARNAM, NEBRASKA, APPELLANT, V. RAY L. KLEIN, APPELLEE.
FARMERS COOPERATIVE ASSOCIATION, A CORPORATION, OF FARNAM, NEBRASKA, APPELLANT, V. ROSS KLEIN, APPELLEE.

241 N. W. 2d 686

Filed May 12, 1976. Nos. 40469, 40470.

Steve Windrum and Bernard B. Smith, for appellant.

Padley & Dudden, for appellees.

Heard before WHITE, C. J., SPENCER, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

SPENCER, J.

These two actions, while filed separately, were consolidated for trial and for purposes of appeal. Plaintiff sued defendant brothers, Ray L. and Ross Klein, for partial failure to deliver corn on certain contracts. Defendants pled mutual mistake and prayed for reformation of the contracts. The trial court submitted all issues, including the one for reformation, to a jury. The jury returned verdicts in favor of the defendants, on which the court entered judgment. Plaintiff prosecutes these appeals. We reverse.

Defendants are engaged in the farming and ranching business near Farnam, Nebraska. They will hereinafter be referred to by their given names, or as defendants. These actions involve three contracts executed by defendants for the delivery of corn by them and their late father to the plaintiff. The contracts are dated April 27, 1973. On that date defendants discussed the sale of corn with plaintiff's manager, Henry Sturgeon.

Sturgeon testified that Virginia Norby, plaintiff's bookkeeper, was present at the time. Both defendants testified she was not. There is also a dispute as to exactly what was said at the meeting of April 27. Plaintiff's evidence is to the effect that the defendants and their father agreed to sell 90,000 bushels of corn to the plaintiff. Three separate contracts were prepared, specifying the amount to be delivered by each of the parties. The contract with Ross was for 44,000 bushels, with Ray for 25,000 bushels, and with the father for 21,000 bushels. This corn was to be delivered during June, July, and August 1973, for $1.41 per bushel.

Plaintiff's evidence also indicates defendants did not want to be held "right down to the very kernel" on the

amount specified in the contract, so the letters "APP." were typed in front of the bushel amounts in each contract. The parties agree that "APP." in the contracts means "approximately." Sturgeon testified that "approximately" in the trade means within 2 percent either up or down.

Defendants have a somewhat different version of the discussions leading to the signing of the contracts. They testified they told Sturgeon they did not know how much corn they had, but were selling all the corn in their bins. The allegations in their respective answers is that they were selling all their 1972 corn crop. Actually, however, Ross delivered 17,782 bushels of 1971 corn. Ray testified that he was selling his 1972 corn, all he had, but on direct examination he does not testify that he told Sturgeon so. On cross-examination, however, when he was asked why he did not insist on "1972" being put in the contract, he said, "We had told him it was the 1972 corn that we had on the farm that we wanted to sell."

Ross testified he intended to sell all the corn he had; he did not intend to restrict it to the 1972 crop, but to sell the 1972 and the 1971 corn. He actually delivered 40,010.45 bushels. Ray delivered 14,969.55 bushels. On the father's contract for 21,000, 22,332.86 bushels were delivered. It was Ray's testimony that some of the corn credited to his father's contract was his. In that event, the overage, or 1,332.86 bushels, should be applied on Ray's contract.

Defendants testified Sturgeon told them all he needed was some figure to put in the contract. It is undisputed that the figures from the Agricultural Stabilization Conservation Service indicate it had sealed over 90,000 bushels of corn for the Kleins. The exact figure mortgaged to the A.S.C.S. was 95,032 bushels.

Virginia Norby testified she was present during the discussion of the sale. She specifically recalls a discussion about the word "approximate" being included in

the contract. She was confident no discussion was had as to the contract being limited to any particular year or years' corn crop, nor was it limited in any way to the bins where the corn might be stored. Sturgeon testified that no such statements were ever made to him. It was Mrs. Norby's testimony that the defendants decided to use the 90,000 bushel figure to be safe. The defendants themselves apportioned the 90,000 to the three contracts.

The Kleins testified all their corn had been delivered to the plaintiff by August 20, 1973. The contract price for the corn was $1.41 per bushel. Price of corn on August 20, 1973, was $2.48 per bushel.

While other issues are raised, the only one we consider herein is whether it was error to submit the issue of reformation to the jury. This issue is an equitable one. While a trial judge, in the exercise of equity jurisdiction, may submit questions of fact to a jury, its finding is purely advisory and not binding on the trial court. See Central Granaries Co. v. Nebraska L. M. Mut. Ins. Assn. (1921), 106 Neb. 80, 182 N. W. 582.

We are concerned here, however, with plaintiff's contention the evidence does not support the verdicts. To decree reformation of a written instrument for a mutual mistake, equity insists that the evidence of the true intent of the parties must be clear, convincing, and satisfactory, and the evidence must establish that the mutual mistake involved is common to both parties, each laboring under the same misconception. See Du Teau Co., Inc. v. New Hampshire Fire Ins. Co. (1953), 156 Neb. 690, 57 N. W. 663.

In Westhaven Properties, Inc. v. Pahl (1968), 183 Neb. 355, 160 N. W. 2d 168, quoting Williston on Contracts, we said: "Equity insists 'that the parties shall have come to a complete mutual understanding of all the essential terms of their bargain, for, otherwise, there would be no standard by which the writing could be reformed.'" In the same case we further said: "In order to warrant reformation of a written instrument

for mistake, the evidence must be clear and convincing." We are not persuaded that the defendants' evidence meets this test.

The evidence of the parties cannot be reconciled. Plaintiff produced as a witness the manager of the Farmland Service Cooperative Elevator who testified that Ray had offered to sell him 90,000 bushels of corn 4 weeks before the present transaction for $1.39 per bushel. On April 27, 1973, Ray called him again and asked the price he expected to pay if corn was delivered. The manager told Ray the price he had agreed to pay March 30. Ray then said there would be no corn delivered. This would be some evidence in support of plaintiff's contention it was buying approximately 90,000 bushels of corn.

Our review of the record convinces us that defendants have not met their burden of proving a mutual mistake by clear, convincing, and satisfactory evidence. As we said in DuTeau Co., Inc. v. New Hampshire Fire Ins. Co., *supra*: "In an action for reformation of a written instrument, the burden rests upon the moving party of overcoming the strong presumption arising from the terms of the written instrument. If the proofs are doubtful and unsatisfactory and if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties."

The judgments should have been directed for the plaintiff. We reverse the judgments in both cases and remand them to the trial court with directions to enter judgments thereon for the plaintiff. The overage of corn delivered on the father's contract of 1,332.86 bushels is to be applied on the Ray Klein contract. Costs in each case are taxed to the respective defendants.

REVERSED AND REMANDED WITH DIRECTIONS.