NEBRASKA ENGINEERING COMPANY, A NEBRASKA CORPORATION, APPELLEE, V. AL GERSTNER, DOING BUSINESS AS 1ST AG MANUFACTURERS CORPORATION, APPELLANT.

323 N.W.2d 84

Filed August 13, 1982. No. 44264.

Owen A. Giles, for appellant.

Michael A. Nelsen of Schmid, Ford, Mooney & Frederick, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

WHITE, J.

Plaintiff, Nebraska Engineering Company (Nebraska Engineering), brought this action in the District Court for Douglas County, Nebraska, against the defendant, Al Gerstner, doing business as 1st Ag Manufacturers Corporation (1st Ag). In the first cause of action, the plaintiff alleged that the defendant purchased merchandise in the value of $14,621.42 and failed to pay for the same. The second cause of action alleged essentially the same facts but alleged fraud in the securing of the merchandise and the failure to pay the account due. The defendant by answer admitted that the goods were sold and delivered to 1st Ag, a Nebraska corporation, but denied that the goods were ordered, solicited, or promised to be paid for directly or indirectly by Al Gerstner, the president and one of two stockholders of 1st Ag, and prayed that the plaintiff's petition be dismissed. For reply, the plaintiff denied generally any new allegations of fact in the defendant's answer. The trial court found for plaintiff and entered judgment for $14,621.42.

The cause was pled as a law action; however, a jury was waived and at trial it became apparent that the plaintiff's basis for recovery was not on any direct solicitation or order by Al Gerstner but was tried on the following theory stated by the trial judge: "The theory upon which the case is being tried and defended is the issue of whether or not the corporate entity should be pierced and personal lia-

bility imposed; is that correct? MR. MILLER: [trial counsel for Gerstner] Yes, Your Honor." The characterization of the action as law or equity becomes important for the purposes of the standard of review applied by this court. "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished; and in their place there shall be hereafter but one form of action, which shall be called a civil action." Neb. Rev. Stat. § 25-101 (Reissue 1979).

We have said that both legal and equitable principles may be enforced in the same action according to the facts. *City of Beatrice v. Gage County,* 130 Neb. 850, 266 N.W. 777 (1936). The essential character of the cause of action and the remedy or relief it seeks, as shown by the allegations of the complaint, determine whether a particular action is one at law or in equity, unaffected by the conclusions of the pleader or what the pleader calls it, or the prayer for relief. *Mills v. Heckendorn,* 135 Neb. 294, 281 N.W. 49 (1938).

This cause of action is one essentially stated at law. However, the theory on which the case was tried differs from the cause of action pled by the petition and is essentially a doctrine that was first cognizable in equity, i.e., to prevent the use of the corporate form to accomplish fraud or injustice. In *United States Nat. Bank of Omaha v. Rupe,* 207 Neb. 131, 135, 296 N.W.2d 474, 477 (1980), this court stated: "In equity, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder or shareholders in various circumstances where necessary to prevent fraud or other injustice."

For the purpose of this case, we shall treat the matter as one in equity according to the agreement of the parties and not one in law as pled. We shall, therefore, review the matter de novo on the record and come to an independent conclusion without ref-

erence to the findings of the District Court. *Daugherty v. Ashton Feed and Grain Co., Inc.,* 208 Neb. 159, 303 N.W.2d 64 (1981).

However, even though this is an equity action and upon appeal it is triable de novo, it is still subject "to the condition that when the evidence on material questions of fact is in irreconcilable conflict, the court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." *Tilden v. Beckmann,* 203 Neb. 293, 297-98, 278 N.W.2d 581, 584-85 (1979); *Rolfsmeyer v. Seward County,* 182 Neb. 348, 154 N.W.2d 752 (1967).

In April 1980 the office manager of 1st Ag placed a telephone order with the office manager of Nebraska Engineering for farm elevator equipment in the sum of $14,621.42. Due to a questionable credit record, Nebraska Engineering refused to sell the goods to 1st Ag on any terms other than a cash basis; however, in a conversation with the office manager and subsequently with the general manager of Nebraska Engineering, it was agreed that the goods could be picked up at Nebraska Engineering and delivered to Michigan where payment was expected immediately from the ultimate purchaser. 1st Ag was acting as a wholesaler of those goods. On that condition the goods were released. 1st Ag received payment from the ultimate purchaser in Michigan and ultimately deposited the money in 1st Ag's account. In spite of repeated demands and promises made and broken, no payment was ever made to Nebraska Engineering. Nebraska Engineering at trial produced the testimony of James Goodnight, a managing partner for Fox & Company, a national public accounting firm, who testified to a detailed analysis of the financial structure and history of 1st Ag. Based on his evaluation of the testimony and the evidence, the trial court found "that the capitalization of 1st Ag

Manufacturers Corporation was and remained grossly inadequate; that the corporation was insolvent at the time the debt, the subject of this action, was incurred; that the defendant [Al Gerstner] herein diverted corporate funds to his own use; and that the corporation was a mere facade for the personal dealings of the defendant and that the operations of the corporation were carried on by him in disregard of the corporate entity, and to the prejudice of plaintiff as a creditor." The court further found, as was admitted by the parties, that the value of the goods was as stated in the plaintiff's petition and that they (the goods) had not been paid for.

The record establishes that the capital stock of 1st Ag was issued on December 28, 1977, in the amount of $1,000 and remained in this amount throughout the period in question. Al Gerstner and his wife were the sole stockholders. The trial court's memorandum accurately summarizes the facts in the record as follows: "According to the federal tax returns for periods in 1977, 1978, and 1979 the corporation operated at a net loss for each of the periods, resulting in negative balances in the 'retained earnings' account, the only other 'equity.' The testimony and other evidence establish that the corporation was insolvent when the subject debt was incurred. In April, 1969, the premises in which the corporation was operating were purchased by defendant and his attorney. A mortgage was given back, but corporation funds were used in payment of the mortgage loan installments. Loans were made to defendant [Gerstner], a director, and his attorney, another director, and while no loss to the corporation of any principal amount of these loans is shown, the fact is material in the determination of whether operations were carried on in disregard of the corporate entity. The corporation was actually dissolved on August 2, 1979, and not revived by a certificate of revival until July 23, 1980, a few days before this action was filed.

During the time the corporation was in a state of dissolution the subject debt was incurred, and the Court finds that defendant had knowledge of the dissolution and ample opportunity to correct the matter. . . . The defendant testified that the years 1977 and 1978 were good years, and profitable, but the income tax returns show operations of the corporation at a loss for those periods. The conclusion is inescapable that the corporation's business was profitable to defendant but not to the corporation and that the corporation was merely an instrument of defendant's personal dealings. The defendant having ignored the corporate entity, this Court will do likewise."

Some of the factors which are relevant in determining whether to disregard the corporate entity are (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard for the corporate entity. *United States Nat. Bank of Omaha v. Rupe,* 207 Neb. 131, 296 N.W.2d 474 (1980).

As pointed out in the plaintiff's brief and by the trial court's excellent memorandum, the actions of the defendant, Al Gerstner, fulfilled not several but each and every one of the above conditions. We agree with the judgment of the trial court. The judgment is affirmed.

AFFIRMED.