FREEMAN SYNACEK, APPELLEE AND CROSS–APPELLANT, V. OMAHA COLD STORAGE TERMINALS, INC., APPELLANT AND CROSS–APPELLEE.

526 N.W.2d 91

Filed January 20, 1995.    No. S–93–1021.

Alan J. Mackiewicz, of Lich, Herold & Mackiewicz, for appellant.

Thomas F. Hoarty, Jr., and Leanne R. Kullenberg, of McGowan & Hoarty, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

Averring that his employment had been terminated in violation of Nebraska's age discrimination act, Neb. Rev. Stat. §§ 48–1001 through 48–1010 (Reissue 1993), the plaintiff–appellee, Freeman Synacek, obtained a judgment for past damages and a separate judgment for future damages, as well as an award of an attorney fee against his former employer, the defendant–appellant, Omaha Cold Storage Terminals, Inc. After filing its notice of appeal, Omaha Cold Storage

successfully petitioned for leave to bypass the Nebraska Court of Appeals. Omaha Cold Storage asserts, among other things, that the trial court erred in failing to dismiss the case on the ground that the evidence is insufficient and in awarding an attorney fee. Synacek cross–appealed, claiming that the fee awarded is inadequate, and has moved for an attorney fee in this court. We reverse the judgments of the trial court and remand the cause for dismissal, dismiss Synacek's cross–appeal, and overrule his motion for an attorney fee in this court.

## II. SCOPE OF REVIEW

The scope of our review is necessarily determined by whether this action is one at law or in equity. *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994). We begin that study by noting the language of § 48–1009:

> In any action brought to enforce the provisions of sections 48–1001 to 48–1009, the court shall have jurisdiction to grant such legal or equitable relief as the court may deem appropriate to effectuate the purposes of sections 48–1001 to 48–1009, including judgments compelling employment, reinstatement, or promotion, or enforcing liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.

Inasmuch as under that provision of the act a plaintiff may invoke either the legal or equitable powers of the court, we next look at Synacek's petition, for whether an action is legal or equitable is determined from its main object as disclosed by the averments of the petition and the relief sought. *Buell, Winter, Mousel & Assoc. v. Olmsted & Perry*, 227 Neb. 770, 420 N.W.2d 280 (1988). Equity acquires jurisdiction over the action when the averments of the pleadings and the relief sought indicate that the main object of the action is equitable in nature. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988); *Buell, Winter, Mousel & Assoc. v. Olmsted & Perry, supra*; *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982); *Nebraska Engineering Co. v. Gerstner*, 212 Neb. 440, 323 N.W.2d 84 (1982). Moreover, where a court of equity has acquired jurisdiction of a case, it will make a complete adjudication of all matters properly presented and

involved in the case and will ordinarily grant such relief, legal or equitable, as may be required and thus avoid unnecessary litigation. *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994); *Ames v. Ames*, 75 Neb. 473, 106 N.W. 584 (1906) (where petition states facts entitling plaintiff to both legal and equitable relief, pleader has invoked equitable powers of court). Thus, in *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988), we held that the age discrimination causes which sought mandatory injunctions as well as damages were equitable in nature. Cf. *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993) (action under act treated as one at law).

Synacek's petition alleges that he was discriminatorily discharged at 59 years of age and that as a result, he "has suffered and will continue to suffer lost wages, lost fringe benefits, and lost opportunities for advancement . . . ." Such "lost opportunities" may be such that the only effective remedy would be through equity in the form of a mandatory injunction ordering that Synacek be reinstated to his former employment. See, *Maxfield v. Sinclair Intern.*, 766 F.2d 788 (3d Cir. 1985), *cert. denied* 474 U.S. 1057, 106 S. Ct. 796, 88 L. Ed. 2d 773 (1986); *Blim v. Western Elec. Co., Inc.*, 731 F.2d 1473 (10th Cir. 1984), *cert. denied* 469 U.S. 874, 105 S. Ct. 233, 83 L. Ed. 2d 161; *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093 (8th Cir. 1982).

Thus, the lost opportunities allegation, coupled with Synacek's prayer that in addition to awarding past and future damages the court grant "such other and further relief" as it "shall deem equitable and just," compels the conclusion that the action was pled in equity. See, also, *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985); *Doak v. Milbauer*, 216 Neb. 331, 343 N.W.2d 751 (1984) (prayer for equitable relief has no place or role in law action).

Accordingly, the jury empaneled to consider some of the issues in this case served only an advisory role, and its findings were not binding on the trial court. *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982); *Farmers Coop. Assn. v. Klein*, 196 Neb. 180, 241 N.W.2d 686 (1976); *Alter v. Bank of Stockham*, 53 Neb. 223, 73 N.W. 667 (1897). Neither is the

verdict binding on this court, for, in an appeal of an equitable action, an appellate court tries the factual issues de novo on the record and reaches its conclusion independent of the factual findings of the trier of fact; provided, however, that where the credible evidence is in conflict on a material issue of fact, it considers and may give weight to the circumstance that the trier of fact heard and observed the witnesses and accepted one version of the facts rather than another. See, *Upah v. Ancona Bros. Co.*, 246 Neb. 585, 521 N.W.2d 895 (1994); *Allen v. AT&T Technologies, supra.*

We also observe that while it was entirely appropriate for the trial court to have submitted the issues of the legality of the discharge and the amount of claimed past damages to the advisory jury and to have reserved the remedy as to the claimed future harm to itself, the better practice would have been to have entered but one judgment. See *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986) (trial court should limit itself to entering but one final determination of rights of parties).

## III. FACTS

Omaha Cold Storage operates a refrigerated warehouse and hired Synacek in 1953 as a fireman responsible for firing the steam boilers. Through taking classes, he obtained an engineer's license and in 1965 was promoted to the position of chief engineer, a supervisory position making him responsible for all maintenance, including the refrigeration system.

Omaha Cold Storage became incorporated in 1979, at which time Roy Mattson, who had managed the predecessor entity for approximately 2 years, became president and a shareholder.

On October 16, 1989, Steven William Tomlinson was hired to serve as vice president and chief operating officer and to succeed Mattson as president when Mattson concluded that Tomlinson was ready. It was Tomlinson's duty to go through the operation and decide what changes needed to be made in order to make it "run more efficiently, cost effective and . . . profitable."

At a meeting of the board of directors of Omaha Cold Storage held on Friday, November 17, 1989, Tomlinson asked Mattson

when he planned to retire. Mattson, who was then approximately 64 years old, replied he would retire when he thought Tomlinson was ready to take over as president. The board, however, voted to have Mattson retire immediately, as Tomlinson would be running the company from that point on.

On the following Monday morning, November 20, Tomlinson called a meeting of supervisors, at which time Synacek's duties were changed. Although his salary remained the same, Synacek was no longer to be responsible for general plant maintenance, but was to be responsible for only maintaining the refrigeration system. Responsibility for general plant maintenance was assigned to Mike Anderson, who became Synacek's boss. When Synacek was told that if he needed any people or materials to complete a job he should go to Anderson, Synacek replied that if Anderson was to be his boss, then Anderson would have to tell Synacek everything that needed to be done, as the boss is supposed to know more than the employee.

There is a great deal of dispute over what transpired immediately following that meeting. Synacek claims that Tomlinson asked Synacek to remain behind and that they then had a private talk, during which, after a discussion concerning the cost of raising children, Tomlinson asked when Synacek planned to retire. According to Synacek, he replied that he had not given the matter any thought, but that if he retired at age 62, it would be $2^1/_2$ years away. Tomlinson denies that such a conversation ever took place, and the other evidence offered in support of either position is inconclusive.

However, there is no disagreement that the next morning, November 21, Anderson talked with Synacek while the latter was changing clothes in front of his locker. After exchanging greetings, Anderson told Synacek that Anderson was " 'not going to fuck with you, because I do not know nothing about refrigeration.' " Synacek replied that was good, but that the " 'little asshole upstairs don't want to fuck with me either.' " Neither is there any disagreement that Tomlinson was the object of Synacek's concern. What is in disagreement is the manner in which Synacek delivered his thought.

Synacek claims that he neither raised his voice, threatened, pointed his finger, nor shook his fist. Anderson, on the other

hand, claims that when he addressed Synacek, Synacek had his back to Anderson and was 8 or 9 feet away. Synacek turned around and walked toward Anderson; it was not until the two were about a foot apart that Synacek delivered his brief oration. Anderson described Synacek as being "[v]ery angry, very upset," "shaking his finger . . . [r]ight in front of [Anderson's] face." Anderson said "okay" and walked out.

According to Anderson, he went upstairs later that day to do some paperwork and saw Tomlinson, who asked about Anderson's conversation with Synacek. Anderson responded that " '[w]e'll work it out' " or " '[w]e'll handle it,' " meaning that he and Synacek would work out whatever differences they had.

However, each of the two or three times that Anderson saw Tomlinson later that day, Tomlinson asked about the conversation, wanting to know exactly what was said. After the third or fourth time he was asked, Anderson later in the afternoon related to Tomlinson exactly what happened.

Tomlinson testified he was "extremely upset" about what Anderson had reported and wanted to get verification. Accordingly, he contacted Jerome Vincent Hytrek, who had been in the area at the time of the incident. According to Tomlinson, Hytrek went to Tomlinson's office when paged between 9:30 and 10 o'clock in the morning and "told me verbatim the way the incident went down that . . . Anderson had related to me earlier."

However, Hytrek, who had since left Omaha Cold Storage and had settled a claim against his former employer, denied hearing the conversation between Anderson and Synacek, denied meeting with Tomlinson, and denied giving Tomlinson any report of the incident.

Tomlinson thereafter testified that while Anderson was initially reluctant to tell him what had happened, Anderson did in fact report the details at 9 o'clock in the morning, and that Hytrek verified Anderson's report at 10 o'clock.

Having determined to discharge Synacek, Tomlinson called Synacek in for a meeting with Anderson and the general manager and did discharge Synacek. According to Tomlinson, Synacek at this time admitted his conversation with Anderson,

but denied calling Tomlinson an asshole. Tomlinson testified that age was not a factor in his decision, maintaining that he considered Synacek's conduct and conversation with Anderson insubordinate and discharged Synacek for that reason and that reason only. Tomlinson explained that the insubordination was reflected not in Synacek's choice of language (indeed, the evidence is that such language was common in the employment environment), but in Synacek's attitude. It was not the language used, but the way it was used.

Tomlinson also testified it was the questioning of both his authority and the authority of Anderson, Synacek's direct supervisor, that constituted insubordination. However, at his earlier deposition, Tomlinson indicated it was only the questioning of Anderson's authority which comprised the offense. Synacek was not replaced; his duties were transferred to a 33–year–old employee.

During the period of October through December 1989, Omaha Cold Storage had a total of 67 employees. Of those employees, 30 of them, or 45 percent, were between 40 and 70 years of age. Of those 30 employees, 10 were 40 to 50; 13 were 50 to 60; and 7 were 60 to 70 years of age.

During that same period, four employees over 40 years of age left their employment at Omaha Cold Storage; Synacek and one other employee were discharged for insubordination, another was discharged because his work was of poor quality, and the last retired.

A total of three employees were terminated for insubordination during those months. Thus, two of the three employees terminated for insubordination after Tomlinson took charge were more than 40 years old. The employee who was under 40 years of age was discharged, before Tomlinson took charge, for coming to work drunk.

## IV. ANALYSIS

Synacek's action is grounded in the provisions of §§ 48–1003 and 48–1004 of the act, which make it unlawful to discharge because of age one who is at least 40 but less than 70 years of age, unless the reasonable demands of the position require such an age distinction.

We have held that although in an action brought under the act the burden of persuasion by a preponderance of the evidence at all times remains with the plaintiff, the method of proof is for the plaintiff to prove a prima facie case; if the plaintiff succeeds in so doing, the defendant has the burden of articulating some legitimate, nondiscriminatory reason for its action; should the defendant succeed in so doing, the plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but a pretext for discrimination. *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993); *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988). However, a defendant who, after the overruling of a motion for dismissal made at the close of the plaintiff's evidence, adduces evidence on its own behalf waives any error on the motion for dismissal. See, *Holman v. Papio–Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994); *Mack v. Parkieser*, 53 Neb. 528, 74 N.W. 38 (1898). Thus, once an age discrimination case has been fully tried on the merits, the focus is on the ultimate question of whether the employer intentionally discriminated against the employee and not on the adequacy of a party's showing at any particular stage of the trial. See, *St. Mary's Honor Center v. Hicks*, ____ U.S. ____, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (race discrimination); *U.S. Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (race discrimination); *Bethea v. Levi Strauss & Co.*, 827 F.2d 355 (8th Cir. 1987) (age discrimination). Since Omaha Cold Storage adduced evidence on its own behalf after it unsuccessfully moved for dismissal at the close of Synacek's case, it waived any error in that regard, and this case was thus fully tried on the merits. As a consequence, the question is whether all the evidence establishes that Omaha Cold Storage intentionally discriminated against Synacek because of his age.

We accept as true Synacek's statement that shortly before he was discharged, he was asked when he intended to retire. However, that fact alone does not establish that he was discharged because of his age. It is entirely appropriate for an employer to inquire as to an employee's thoughts in that regard; an employer, too, must plan for the future. Moreover, an

employer might be willing to tolerate for a short time but not for a long time an employee whom the employer finds undesirable for some nondiscriminatory reason. In view of the fact that Tomlinson was brought in to make the operation profitable, Mattson's having been asked the same question immediately before he was removed as president does not persuade us that Omaha Cold Storage had thereby demonstrated a desire to purge itself of older workers.

Likewise, the statistical evidence concerning the number of employees, by age group, and the number of types of discharges in the over–40 age group does not establish anything of significance.

Because of the inconsistencies between the testimony of Tomlinson, Anderson, and Hytrek concerning when and how Tomlinson went about confirming the November 21 conversation between Synacek and Anderson, we conclude that Tomlinson's proffered reason for discharging Synacek was not entirely truthful. Nonetheless, the evidence does not persuade us that Omaha Cold Storage discriminated against Synacek because of his age. In this regard, we hold that for the purpose of analyzing employment discrimination cases, the term "pretext" means pretext for discrimination; to establish that the proffered reason for the action taken by the employer was a pretext for discrimination, the employee must show both that the proffered reason was false and that discrimination was the real reason. *St. Mary's Honor Center v. Hicks, supra*; *Rhodes v. Guiberson Oil Tools*, 39 F.3d 537 (5th Cir. 1994).

Accordingly, there is merit in Omaha Cold Storage's claim that the evidence is insufficient.

## V. JUDGMENT

The trial court's judgments in Synacek's favor are reversed and the cause remanded for dismissal. By virtue of the foregoing, it follows that even if there otherwise were a basis for awarding Synacek an attorney fee, a matter we do not decide, his cross–appeal must be, and hereby is, dismissed, and his motion for an attorney fee in this court must be, and hereby is, overruled.

REVERSED AND REMANDED WITH
DIRECTION TO DISMISS.

LANPHIER, J., dissenting.

This case arises under the Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. § 48–1001 et seq. (Reissue 1993). In age discrimination cases brought under our state law, we have held that

"although the ultimate burden of persuasion by a preponderance of the evidence at all times remains with the plaintiff, the method of proof is for the plaintiff to prove a prima facie case; if the plaintiff succeeds in so doing, the defendant has the burden of articulating some legitimate, nondiscriminatory reason for its action. Should the defendant succeed in so doing, the plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 878, 503 N.W.2d 211, 217 (1993). See, also, *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988).

Thus, if the defendant articulates some allegedly legitimate, nondiscriminatory reason for its action, the plaintiff must establish, by a preponderance of the evidence, that the proffered reason was pretextual. Now, the majority holds that a plaintiff must not only show that the reason proffered by the employer is false but also establish that the employee's age was the real reason for the employer's action. In so doing, the majority relies on *St. Mary's Honor Center v. Hicks*, ____ U.S. ____, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). However, the majority does not, in my opinion, set out the full holding of the Supreme Court of the United States in *St. Mary's Honor Center*. In reliance on *St. Mary's Honor Center* in its entirety, I dissent.

In *St. Mary's Honor Center*, the Court addressed the issue of whether the trier of fact's rejection of the employer's asserted reasons for the employer's actions mandates a finding for the plaintiff. In that case, the majority held that rejection of the defendant's proffered reasons does not compel judgment for the plaintiff. A finding that the employer's explanation of its action is not believable is not the equivalent of finding that the employer's action was the product of unlawful discrimination. *Id.*

However, *St. Mary's Honor Center* also holds that the "factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the [plaintiff's] prima facie case, suffice to show intentional discrimination." 113 S. Ct. at 2749. "[R]ejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination" without any additional proof of discrimination. *Id.*

In this case, the majority concludes that the defendant's proffered reason for terminating Synacek was not entirely truthful. However, the majority would require Synacek to show both that the proffered reason was false and that discrimination was the real purpose. The majority ignores the possibility that a finding of discrimination could be based solely upon the plaintiff's prima facie case and the inferences arising from the fact that the defendant's proffered reason was proven to be less than fully truthful.

The evidence establishes that the day Tomlinson took over as president, he asked 59–year–old Synacek when he planned to retire; that the next day a conversation took place between Synacek and Anderson during which alleged insubordination occurred; that two of the three persons present during that conversation testified that no threats, abuse, or shouting occurred; and that 4 days earlier, Tomlinson asked the 64–year–old president, Mattson, when he planned to retire, after which the board voted to remove Mattson. Based on this evidence, a jury concluded that Omaha Cold Storage had discriminated against Synacek on the basis of his age. The trial court, sitting in equity, accepted the findings of the jury and awarded front pay and attorney fees in addition to the jury's damage award.

In an appeal of an equitable action, an appellate court tries the factual issues de novo on the record and reaches its conclusion independent of the factual findings of the trier of fact. However, where the credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the circumstance that the trier of fact heard and observed the witnesses and accepted one version of the facts rather than another. *Upah v. Ancona Bros. Co.*, 246 Neb. 585,

521 N.W.2d 895 (1994); *County of Dakota v. Worldwide Truck Parts & Metals*, 245 Neb. 196, 511 N.W.2d 769 (1994); *Rigel Corp. v. Cutchall*, 245 Neb. 118, 511 N.W.2d 519 (1994).

The elements of Synacek's prima facie case, coupled with the inference arising from the lack of credibility contained in the employer's evidence, suggest that we should give weight to the fact finder's determination that Omaha Cold Storage intentionally discriminated against Synacek because of his age. Accordingly, I would affirm the judgment of the district court in this regard.

WHITE, J., joins in this dissent.