CAROLYN APLAND, APPELLEE AND CROSS-APPELLANT, V.
NORTHEAST COMMUNITY COLLEGE,
APPELLANT AND CROSS-APPELLEE.

599 N.W. 2d 233

Filed August 24, 1999. No. A-98-108.

David H. Ptak, of Stratton & Ptak, P.C., for appellant.

Charles W. Balsiger, of Balsiger & Carney, for appellee.

HANNON, SIEVERS, and CARLSON, Judges.

CARLSON, Judge.

## I. INTRODUCTION

Northeast Community College (NECC) appeals from a judgment by the district court for Madison County. For the reasons set forth below, we affirm in part, and in part reverse and remand with directions to dismiss.

## II. BACKGROUND

In October 1970, Carolyn Apland was hired as a secretary for the Adult Basic Education program (ABE) at NECC, then known as Northeast Technical Community College, located in Norfolk, Nebraska. On July 1, 1975, she was named the director of ABE, a position she has held since that date. This position is subject to annual reappointment. In her capacity as director of ABE, Apland is classified by NECC as a professional/managerial employee. Her responsibilities are primarily administrative, although she testified that she sometimes taught in a substitute teacher capacity and possibly at other times. (The record is not clear on this point.) Apland does not have a 4-year degree from a college or university, but does have a 1- or 2-year degree from Northwest College of Commerce in Huron, South Dakota. She does not have a teaching certificate.

In 1993, NECC adopted a voluntary separation program (VSP), a program pursuant to which qualified employees between the ages of 55 and 64 may participate in early partial or total separation from employment, i.e., early retirement. VSP participants receive a stipend equal to 6.5 percent of their annual salary, multiplied by the number of full years of employment, and finally multiplied by a percentage factor related to their age at retirement.

According to Alice Ehrenfried, director of human resources for NECC, the VSP initially provided that employees working in positions funded by an outside agency were categorically ineli-

gible to participate. However, Ehrenfried testified, the plan was amended in 1994 to provide that such employees could be nonetheless deemed eligible. That amended language provided: "Program Eligibility . . . . 5. Employees whose current employment is provided in part or in total by a contract with an outside agency *may* not be eligible for the Voluntary Separation Program. *This will be administratively determined at the time of hire or reappointment.*" (Emphasis supplied.)

Apland's date of birth is October 26, 1940, and, accordingly, if otherwise qualified, she would have been eligible to participate in the VSP in 1995. It is uncontroverted that Apland's position is funded, at least in part, by the State Department of Education. Until 1995, Apland's annual reappointment contract had been silent with regard to her eligibility for the VSP. However, her letter of reappointment that she received on or about June 25, 1995, contained, for the first time, the following language: "Position not included in Northeast Voluntary Separation Program." Ehrenfried testified that similar language was included in the reappointment contracts distributed that year to all other employees who were similarly deemed ineligible.

Apland filed a grievance, which was ultimately denied. She brought the instant court action on November 16, 1995, and filed an amended petition on or about December 6, 1996. In her petition, she sought a declaration of the rights and responsibilities between the parties and "reinstatement of her eligibility" for participation in the VSP.

Trial was held on November 24, 1997. The trial court entered its judgment on January 12, 1998, holding that Apland was a "teacher" for purposes of Neb. Rev. Stat. § 85-1528 (Reissue 1994), which provides that approval or amendment of all contracts of the teaching staff of a community college must be *sanctioned* by that college's board of governors. The trial court then concluded that any decision as to Apland's eligibility for participation in the VSP must be made by NECC's board of governors after notice and hearing. Because the decision had been made administratively by NECC and not by its board of governors, the trial court concluded that Apland should be provided a hearing before the board of governors on the issue of her eligibility to

participate in the VSP. The trial court accordingly ordered that such hearing be held by the board of governors after appropriate notice.

The court did not address the issue of whether Apland was eligible to participate in the VSP. It did find that Apland's claim of age discrimination was "without merit."

NECC filed this notice of appeal on February 4, 1998.

### III. ASSIGNMENTS OF ERROR

NECC made four assignments of error, which we consolidate into two: The trial court erred in (1) concluding that Apland was a teacher for purposes of § 85-1528 and that the statute accordingly applies to her, and (2) failing to find that Apland was ineligible to participate in the VSP.

In her cross-appeal, Apland asserts that the trial court erred in finding that she was not subjected to age discrimination by NECC.

### IV. STANDARD OF REVIEW

The scope of our review is necessarily determined by whether this action is one at law or in equity. *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995). An action for injunctive relief sounds in equity. *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State v. World Diversified, Inc.*, 254 Neb. 307, 576 N.W.2d 198 (1998).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997).

## V. ANALYSIS

### 1. NECC'S APPEAL

(a) Whether Apland Is a Teacher for Purposes of § 85-1528

NECC first asserts that the trial court erred in deeming Apland a "teacher" for purposes of § 85-1528. That statute provides:

> The contracts of the teaching staff and school nurses employed by a board of a community college shall require the sanction of a majority of the members of the board. Except as provided in section 85-1534, each such contract shall be deemed renewed and in force and effect until a majority of the board votes, sixty days before the close of the contract period, to amend or terminate the contract for just cause. The secretary of the board shall notify each teacher or school nurse in writing at least ninety days before the close of the contract period of any conditions of unsatisfactory performance or a reduction in teaching staff or nursing staff that the board considers may be just cause to either amend or terminate the contract for the ensuing year. Any teacher or school nurse so notified shall have the right to file within five days of receipt of such notice a written request with the board for a hearing before the board. Upon receipt of such request, the board shall order the hearing to be held within ten days and shall give written notice of the time and place of the hearing to the teacher or school nurse. At the hearing, evidence shall be presented in support of the reasons given for considering amendment or termination of the contract, and the teacher or school nurse shall be permitted to produce evidence related thereto. The board shall render the decision to amend or terminate a contract based on the evidence produced at the hearing.

Chapter 85 does not define "teacher" or "teaching staff." We are accordingly presented with an issue of statutory construction.

In construing a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Nickel v. Saline Cty. Sch. Dist. No. 163*, 251 Neb. 762, 559 N.W.2d 480 (1997). In so doing, we

must look to the statute's purpose and give the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.* Finally, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996).

The trial court found that Apland is a teacher because "the evidence adduced at trial shows that as a part of her duties, she is a teacher." The trial court concluded that her position is therefore subject to § 85-1528. We disagree.

Many of the provisions in chapter 85, which pertains to community colleges, are similar to, and were clearly borrowed from, chapter 79 of the Nebraska Revised Statutes, which pertains to school districts providing education at the elementary and high school levels. Of special relevance to this case is the fact that § 85-1528 is nearly identical to Neb. Rev. Stat. § 79-843 (Reissue 1996).

Chapter 79 does contain a definition section, Neb. Rev. Stat. § 79-101 (Cum. Supp. 1998). Section 79-101(9) defines teacher as any employee "who is regularly employed for the instruction of pupils in the public schools," while § 79-101(10) defines administrator as "any . . . employee . . . or . . . supervisory or administrative personnel who do[es] not have as a primary duty the instruction of pupils in the public schools."

As director of NECC's ABE, Apland's duties are primarily administrative, including such tasks as preparation of the annual budget and grant applications, submission of monthly reports to the State Department of Education, and supervision of the paid teaching staff and volunteers. She does not hold a teaching certificate. Although Apland testified that she also teaches, it appears clear from this record that teaching is not her "primary duty," and that she is not "regularly employed for the instruction of pupils."

In sum, although chapters 79 and 85 are not precisely in pari materia, in that chapter 79 deals with education from elementary through secondary school while chapter 85 deals with community colleges, we nonetheless feel that the definition sections of chapter 79 give excellent guidance in interpreting chapter 85. We accordingly conclude that Apland is not a teacher for pur-

poses of § 85-1528 and that the trial court erred in concluding otherwise. Accordingly, the order by the trial court directing that Apland be afforded a hearing before NECC's board of governors pursuant to § 85-1528 is reversed.

(b) Whether Apland Is Eligible to Participate in VSP

Because we have held that Apland is not a teacher for purposes of § 85-1528 and have accordingly concluded that her position is not subject to the protections or terms of that statute, the issue becomes simply whether NECC wrongly deemed her ineligible to participate in the VSP according to the terms of that program.

The VSP provides that eligible employees must (1) be working half time or more and enrolled in NECC's regular retirement plan; (2) be at least 55 years of age and no more than 64 on the first day of the first participation year, with a minimum of 15 years of service to NECC, excluding any approved leaves of absence; (3) not be receiving long-term disability; (4) not be on leave of absence; and, (5) if working in a position funded "in part or in total by a contract with an outside agency," be administratively deemed eligible at the time of reappointment.

NECC has stipulated that Apland meets the first four requirements for eligibility. The evidence shows that NECC had made an explicit administrative determination that Apland was ineligible as of June 6, 1995, the date that she was sent her proposed contract for reappointment. Moreover, from NECC's perspective, this statement was nothing more than a memorialization of Apland's previously existing status with regard to the VSP. According to Ehrenfried,

> I believe that when [Apland] came to the [Human Resources] office and asked about [the 1995 reappointment contract], we discussed the fact that prior to the 1995 appointment, the policy had stated that no one with an outside agency funding was eligible. I felt that should have been very clear to her that she was not included in the voluntary separation. But when the policy was changed . . . and it did leave a place where some people might, and some people might not be eligible, I felt that the employees deserved clarification. I knew that [Apland] had con-

cerns in the past about whether or not she was eligible. And I had felt that the policy was very clear. It said that she was not. But when we got to this point in time, and when I was the director, I felt that it was fair to employees to make sure they understood.

Apland's 1995 contract, as well as the earlier ones in this record, each provided that "[b]enefit plans shall be available in accordance with established policy as noted in the official staff handbook and upon attainment of eligibility." Because Apland never attained eligibility, she has no contractual right to participate in the VSP. Accordingly, unless Apland can show that this determination by NECC was an act of age discrimination against her, an issue we address below, NECC cannot be compelled to deem her eligible. We therefore conclude, upon our de novo review of the record, that Apland is not eligible for participation in NECC's VSP.

## 2. APLAND'S CROSS-APPEAL

On cross-appeal, Apland asserts that the trial court erred in finding her allegation of age discrimination to be "without merit." Although not set out in her petition, this portion of Apland's action appears to be grounded in Nebraska's Act Prohibiting Unjust Discrimination in Employment Because of Age (Act), Neb. Rev. Stat. § 48-1001 et seq. (Reissue 1998), which makes it unlawful to discriminate against a person who is at least 40 but less than 70 years of age, unless such an age distinction is made for legitimate and reasonable purposes.

 Apland may establish a prima facie case of age discrimination by virtue of disparate treatment under the Act by showing that (1) she was in the protected age category; (2) she met the applicable qualifications; (3) despite those qualifications, she was deemed ineligible to participate in the VSP; and (4) other employees of similar qualifications who were not members of a protected group were deemed eligible at the time her request for eligibility was denied. *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988). Although the ultimate burden of persuasion by a preponderance of the evidence remains at all times with the plaintiff, if the plaintiff proves a prima facie case, the defendant then has the burden of articulat-

ing some legitimate, nondiscriminatory reason for its action. *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993).

Our de novo review of the record shows that Apland has failed to satisfy at least two prongs of the prima facie case for age discrimination. First, although it is uncontroverted that she is within the protected age category, it is equally clear, as previously discussed, that she has not shown that she is eligible to participate in the VSP.

The fourth prong of a prima facie age discrimination case requires a showing that other employees not in the protected class were treated differently. In attempting to meet this prong, Apland points to two other employees, Vickie Johnson and Bev Meyers, whom she alleges were also in positions funded by outside agencies, but were nonetheless deemed eligible to participate. As a threshold matter, we note that the record is devoid of any evidence as to the age of either of those employees, e.g., of any evidence that either of them is within or without the protected age class. For that reason, Apland cannot be said to have established this prong.

Moreover, even if Apland had established a prima facie case, NECC has articulated a legitimate, nondiscriminatory reason for extending VSP eligibility to some individuals funded by outside sources. As noted above, as originally set up, the VSP provided that individuals working in such positions were categorically ineligible to participate. The VSP was later amended to provide that those individuals *may* nonetheless be deemed eligible. When asked why the VSP was so amended, Gary Stover, dean of administrative services for NECC, explained the underlying rationale:

Q. Now, were you involved in the discussion and implementation of the amendments to the Voluntary Separation Program that occurred in July of 1994?

A. Yes, I was.

Q. Did you have input as far as into the reason for amending that program or that voluntary separation?

A. Yes, I did.

Q. Would you tell the court what the basis for the July, 1994 amendment to the Voluntary Separation Program was?

A. It was determined by the administrative counsel [sic], who made a recommendation to the Board of Governors, that the wording be amended to allow the flexibility to the institution, should an opportunity or the need arise, to request that an individual who was currently eligible for the Voluntary Separation Program to take part in a grant related activity, which would otherwise disqualify them from eligibility.

Q. That was the purpose for the amendment?

A. Yes, it was.

Q. The purpose of the amendment was not to play football with an employee's eligibility, to be able to jerk them back and forth as far as the program?

A. No, sir, there was no intent.

In other words, NECC asserts that its policy of distinguishing between various individuals whose jobs are funded by outside funding with regard to eligibility for participation in the VSP was adopted for reasonable business and academic grounds. Section 48-1003 of the Act provides that the Act does not make it unlawful for an employer, inter alia, to distinguish between employees "when the differentiation is based on reasonable factors other than age." Thus, unless Apland shows that this rationale is merely a pretext for age discrimination, it appears to us that NECC has met its burden of " 'articulating some legitimate, nondiscriminatory reason for its action.' " *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 878, 503 N.W.2d 211, 217 (1993).

■ To establish that the proffered reason for an action taken by an employer was a pretext for discrimination, an employee must show both that the proffered reason was false and that discrimination was the real reason. *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995). Apland has shown neither. Accordingly, she has failed to establish a claim for age discrimination. Her cross-appeal is without merit. The trial court's decision is affirmed on this issue.

## VI. CONCLUSION

For the reasons set forth above, the decision by the district court for Madison County is affirmed in part and in part reversed. Because we hold that the district court erred in ordering NECC's board of governors to conduct a hearing after notice with regard to Apland's eligibility to participate in the VSP, we remand this matter to that court with directions to dismiss this action.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.