Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/01/2025 09:09 AM CDT

Nathaniel Deckard, appellant, v.
Rosalyn Cotton et al., appellees.

___ N.W.3d ___

Filed August 1, 2025.    No. S-24-144.

1.  **Actions: Mandamus: Judgments: Appeal and Error.** An action for a
    writ of mandamus is a law action. In a bench trial of a law action, the
    trial court's factual findings have the effect of a jury verdict, and an
    appellate court will not disturb those findings unless they are clearly
    erroneous.
2.  **Judgments: Statutes: Appeal and Error.** Questions of law and statu-
    tory interpretation require an appellate court to reach a conclusion inde-
    pendent of the decision made by the court below.
3.  **Mandamus: Words and Phrases.** Mandamus is a law action and is
    defined as an extraordinary remedy, not a writ of right, issued to compel
    the performance of a purely ministerial act or duty, imposed by law
    upon an inferior tribunal, corporation, board, or person, where (1) the
    relator has a clear right to the relief sought, (2) there is a corresponding
    clear duty existing on the part of the respondent to perform the act, and
    (3) there is no other plain and adequate remedy in the course of the law.
4.  **Mandamus.** An act or duty is ministerial only if there is an absolute
    duty to perform in a specified manner upon the existence of certain
    facts.
5.  **Sentences: Probation and Parole: Words and Phrases.** The provisions
    of Neb. Rev. Stat. § 83,1,118(2) (Cum. Supp. 2022) create a mathemati-
    cal operation of subtraction in which the "good time" is the subtrahend
    (the amount being taken away), and the "maximum term" is the minuend
    (the amount from which good time is subtracted), the difference of
    which results in years, which dictates the parole discharge date.
6.  **Sentences.** A life sentence, by its very nature, is indefinite. It is not
    possible to determine the number of years which an offender may live
    serving his or her life sentence.

7. **Constitutional Law: Convictions: Sentences.** There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.

8. **Constitutional Law: Statutes: Sentences: Time.** Not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited by ex post facto principles. The question is a matter of "degree." The controlling inquiry is whether retroactive application of the change in the law created a sufficient risk of increasing the measure of punishment attached to the covered crimes.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed.

Nathaniel Deckard, pro se.

Michael T. Hilgers, Attorney General, Joseph W. McKechnie, Timothy M. Young, and Shaianne Sunagawa, Senior Certified Law Student, for appellees.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Bergevin, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE
Nathaniel Deckard filed this mandamus action in the district court for Lancaster County in which he alleged that the Nebraska Board of Parole (the Board) has a clear ministerial duty under Neb. Rev. Stat. § 83-192(3) (Reissue 1971) to provide Deckard with a parole discharge date. At the time the action was filed, Deckard was incarcerated at the Nebraska State Penitentiary and was parole eligible, but the Board had not determined the time of his discharge from parole. Deckard's petition alleged that his date of mandatory discharge from parole should be calculated under the statutes in force when he was convicted in 1974 and that further, under the Board's practices at that time, "there was no such phenomenon as a 'life-time parolee' in Nebraska." The district court denied Deckard's petition, and he appeals. Because the Board does

not have a clear ministerial duty to set a discharge date for a parolee serving a life sentence, we affirm.

## II. STATEMENT OF FACTS

At the time these proceedings were initiated, Deckard was an inmate in the Nebraska Department of Correctional Services. In 1974, Deckard was convicted and sentenced to life in prison on a second degree murder conviction and to 10 years in prison on an escape conviction. The sentences were ordered to be served concurrently. At the time of his sentencing on the murder conviction, he was subject to a minimum term of 10 years' imprisonment and a maximum term of life imprisonment prior to the time he would be eligible for parole. See *State v. Deckard*, 272 Neb. 410, 722 N.W.2d 55 (2006). See, also, Neb. Rev. Stat. §§ 28-402 (Reissue 1964) and 83-1,105 (Cum. Supp. 1974).

Deckard was initially released on parole after serving 12½ years. In 1995, his parole was revoked due to a misdemeanor theft charge and drug use. Subsequently, Decker unsuccessfully sought postconviction relief, the denial of which we affirmed in *State v. Deckard, supra*.

Deckard was again granted parole in March 2016. According to the petition, in January 2020, a parole officer informed Deckard that he scored a """"moderate risk"""" under the Board's "risk and needs assessment tool" and that he would require a higher level of supervision. The higher level of supervision included continuous electronic ankle bracelet monitoring; a 10 p.m. curfew; a travel restriction to Douglas County, Nebraska; and a change of urinalysis schedule from "random/probable cause" to "on call/on demand." Deckard's parole was revoked in 2022, and he was reincarcerated. In August 2023, he was informed by the Board during a parole review that when parole would be granted, he would be a lifetime parolee. After the 2023 review, Deckard's parole hearing was deferred until August 2024.

In November 2023, Deckard filed a petition against the Board's members, in their official capacities, seeking

mandamus. He alleged that he was parole eligible and argued that the Board had a duty to determine the time of his discharge from parole under § 83-192(3) (Reissue 1971).

The petition alleged that lifetime parole did not exist when he began his sentence in April 1974. In support of this allegation, Deckard named several similarly situated individuals whom he alleged were discharged from parole according to the statutes and the Board's policies that were in force at that time. Deckard requested that the Board follow a "well-established practice" from the 1970s "to discharge a second degree lifer's parole term after 2 to 3 years of good behavior."

Deckard further claimed that the risk and needs assessment tool that led to the intensification of his parole supervision did not exist when he was first incarcerated. He believes that under parole statutes and policies of the Board in effect in April 1974, he should have been discharged from parole before his parole was revoked in 2022. He alleged that the 2018 amended statute (quoted later in this opinion), as applied to him, constituted an ex post facto law because it enhanced the penalties that did not exist when the offense was committed.

## 1. Parole Statutes

At the time that Deckard's sentence commenced in 1974, the relevant statutes provided, inter alia: "The Board of Parole shall: . . . (3) Determine the time of discharge from parole," § 83-192 (Reissue 1971), and "[t]he Board of Parole may discharge a parolee from parole at any time if such discharge is compatible with the protection of the public and is in the best interest of the parolee," Neb. Rev. Stat. § 83-1,118(2) (Reissue 1971). Section 83-1,118(3) (Reissue 1971) provided that the Board "shall discharge a parolee . . . when the time served in the custody of the Division of Corrections and the time spent on parole equals the maximum term reduced by his parole good time reductions but not reduced by his institutional good time reductions."

The parole statutes changed in 2018. Section 83-192 was revised to state, in relevant part: "(1) The Board of Parole

shall: . . . (c) Determine the time of *mandatory* discharge from parole." § 83-192(1)(c) (Cum. Supp. 2022) (emphasis supplied). The Nebraska Legislature removed the Board's power to grant discretionary parole discharges under § 83-1,118(2) (Reissue 1971) and replaced discretion with a mathematical requirement as follows: "The [B]oard shall discharge a parolee from parole when the time served in the custody of the department and the time served on parole equal the maximum term less good time." § 83-1,118(2) (Cum. Supp. 2022). Although the parole statutes have been amended again since 2018, the relevant provisions of §§ 83-192(1) and 83-1,118(2) (Cum. Supp. 2022) remain as enacted in 2018. See, 2024 Neb. Laws, L.B. 631, § 29; 2024 Neb. Laws, L.B. 20, § 7; 2023 Neb. Laws, L.B. 50.

In 2015, the Nebraska Legislature codified a requirement that the Board utilize a validated risk and needs assessment tool to determine appropriate levels of supervision for parolees. See Neb. Rev. Stat. § 83-1,100.02 (Supp. 2015). This tool was applied to Deckard in 2020.

## 2. District Court's Order

Following a hearing, the district court determined that Deckard failed to establish a clear ministerial duty for the Board to provide him with a parole discharge date under application of either the 1974 or 2018 parole statutes. The court read § 83-192(3) (Reissue 1971) with § 83-1,118(2) (Reissue 1971) and determined that if they applied, the Board's decision as to when Deckard should be discharged from parole under the 1974 parole statutes was wholly discretionary in light of his life sentence.

With regard to the 2018 statutory amendments and Deckard's contention that he is being punished in violation of ex post facto principles, the district court determined that application of the amended statutes to Deckard's parole "did not stiffen the punishment for the crime" and rejected Deckard's contention.

Deckard appeals. He subsequently made several filings seeking to expand the record on appeal with evidence not considered by the trial court. Deckard also requested appointment of counsel that would facilitate the viewing of the State's files pertaining to parole. We overruled his motion for appointment of counsel without prejudice to filing in trial court and took other requested relief under submission. Later in this opinion, we deny all other requested relief.

## III. ASSIGNMENTS OF ERROR

Deckard claims, summarized and restated, that the district court erred (1) when it found that the Board had no clear ministerial duty to determine Deckard's parole discharge date and (2) when it concluded that the amended parole discharge statutes did not violate the ex post facto law prohibitions. In addition, certain of Deckard's arguments denominated as separate assignments of error are subsumed and addressed within our analysis, and others were not presented to the district court and therefore are not considered on appeal.

## IV. STANDARDS OF REVIEW

[1,2] An action for a writ of mandamus is a law action. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous. *Nebraska Journalism Trust v. Dept. of Envt. and Energy*, 316 Neb. 174, 3 N.W.3d 361 (2024). However, questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below. *Id*.

## V. ANALYSIS

For relief in this mandamus action, Deckard seeks an order directing the Board to determine his time of discharge from parole in accordance with the provisions of § 83-192(3) as it existed in 1971. He also contends that in accordance with what he describes as the Board's "well-established practice"

in the 1970s, the Board should enter an order discharging him from parole "after 2 to 3 years of good behavior," notwithstanding his life sentence. We understand Deckard to contend that all aspects of his parole should be governed by the parole statutes enacted in 1971 because that was the scheme in effect when his sentences became final in 1974. The State does not appear to disagree, although the record reflects instances in which the Board has applied the parole statutes as revised in 2018. Ultimately, this case does not require us to determine whether the relevant aspects of Deckard's parole are governed by the 1971 parole statutes or the 2018 parole statutes, because, as we will explain, neither statutory scheme created an absolute ministerial duty requiring the Board to set a mandatory parole discharge date for an offender with a life sentence. Because we determine that there is no clear ministerial duty for the Board to make such a determination, we affirm the order of the district court that denied mandamus relief.

## 1. Mandamus

[3] Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy in the course of the law. *Cain v. Lymber*, 306 Neb. 820, 947 N.W.2d 541 (2020).

[4] The general rule is that an act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *Id.*

## 2. No Clear Ministerial Duty Under §§ 83-192(3) and 83-1,118(2) (Reissue 1971)

Although Deckard relies on § 83-192 (Reissue 1971), which provided that "[t]he Board of Parole shall: . . . (3) Determine the time of discharge from parole," he overlooks

the discretionary nature of the 1971 statutory scheme. Statutes relating to the same subject are in pari materia and should be construed together. See *Hochstein v. Cedar Cty. Bd. of Adjustment*, 305 Neb. 321, 940 N.W.2d 251 (2020). Specifically, § 83-1,118(2) (Reissue 1971) provided that the precise time of parole discharge was discretionary: "The Board of Parole may discharge a parolee from parole at any time if such discharge is compatible with the protection of the public and is in the best interest of the parolee." The latter provision makes clear the Board has discretion, and mandamus is inappropriate; further, as a result, there is no reason to comment on other provisions of the 1971 statute, including a potential computation regarding the date of discharge.

Deckard asserts at length that in times past, other offenders who were sentenced to life imprisonment for second degree murder were discharged from parole. Deckard contends that the Board should follow the practices from the 1970s and that if the Board adhered to those practices, he would be discharged from parole on a date certain. We conclude that under these statutes, Deckard has no right to a parole discharge date and the Board has no duty to provide such a date.

We are aware that the U.S. Supreme Court has rejected an argument similar to that advanced by Deckard addressing whether a pardons board's practice of granting commutations to most inmates serving a life sentence created a protectable liberty interest. In *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981), the U.S. Supreme Court concluded there was no such liberty interest. In *Dumschat*, the Connecticut Board of Pardons had granted about three-fourths of the applications for commutation of life sentences. Other inmates serving a life sentence, whose commutations had been denied, argued that the pardons board's practice was sufficient to create a protectable liberty interest in commutation. The Court disagreed and concluded that a liberty interest could not be created simply by past actions of the pardons board. The *Dumschat* court stated:

A constitutional entitlement cannot "be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past." . . . No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate no constitutional protections; a contrary conclusion would trivialize the Constitution.

452 U.S. at 465 (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)). The reasoning in *Dumschat* applies here. Because the power of the Board to grant discharge from parole was expressly discretionary under the above statutes, there is no clear ministerial duty for the Board to set a discharge date.

For completeness, we note that Deckard relies heavily on the mandamus case of *Pratt v. Nebraska Bd. of Parole*, 252 Neb. 906, 567 N.W.2d 183 (1997). His reliance is misplaced. In *Pratt*, we determined that under the statute then in place, when the judge recommended parole, the Board was under a ministerial duty to consider the inmate parole eligible, even though it had discretion not to grant parole, notwithstanding an Attorney General opinion to the contrary. See Att'y Gen. Op. No. 93096 (Nov. 18, 1993). *Pratt* dealt with parole eligibility under the former statutory scheme; it did not address parole discharge, and it is not applicable to the instant case.

Based on the foregoing, there is no duty of the Board to set a parole discharge date under the statutes in place in 1974; therefore, the district court did not err when it denied relief on this basis.

### 3. No Clear Ministerial Duty Under §§ 83-192 and 83-1,118(2) (Cum. Supp. 2022)

Even if we were to assume that certain aspects of Deckard's parole are governed by § 83-192 as revised in 2018, mandamus was still properly denied because the Legislature did not provide statutory language that would permit the Board to determine a parole discharge date in the case of a life

sentence; therefore, the Board does not have a clear ministerial duty to set a mandatory parole discharge date for Deckard.

As stated, § 83-192 was revised in 2018 to state, in relevant part: "(1) The Board of Parole shall: . . . (c) Determine the time of mandatory discharge from parole." § 83-192(1)(c) (Cum. Supp. 2022). And as compared to the discretionary provision of § 83-1,118(2) (Reissue 1971) in place when Deckard was initially sentenced, § 83-1,118(2) (Cum. Supp. 2022) now provides a computation for implementing § 83-192(1)(c) (Cum. Supp. 2022) and requires the Board to "discharge a parolee from parole when the time served in the custody of the department and the time served on parole equal the maximum term less good time."

[5] The provisions of § 83,1,118(2) (Cum. Supp. 2022) create a mathematical operation of subtraction in which the "good time" is the subtrahend (the amount being taken away), and the "maximum term" is the minuend (the amount from which good time is subtracted), the difference of which results in years, which dictates the parole discharge date.

[6] As noted previously, Deckard was sentenced to life imprisonment for second degree murder. See *State v. Deckard*, 272 Neb. 410, 722 N.W.2d 55 (2006). We have observed that a life sentence, "[b]y its very nature[,] is indefinite. It is not possible to determine the number of years which [an offender] may live serving his life sentence." *State v. Lynch*, 215 Neb. 528, 537, 340 N.W.2d 128, 134 (1983).

Because Deckard's life sentence results in a term that is not quantifiable in numerical terms, there is no number from which to deduct good time under § 83-1,118(2) (Cum. Supp. 2022). Requiring the Board to set a mandatory parole discharge date for Deckard based on a life sentence as the minuend would yield an absurd result. See *Thomas v. Peterson*, 307 Neb. 89, 948 N.W.2d 698 (2020). We have concluded similarly when applying parole eligibility to a life sentence and noted that there is "no term of years from which reductions can be taken." See *Poindexter v. Houston*, 275 Neb. 863, 868, 750

N.W.2d 688, 693 (2008). See, similarly, *State v. Lynch, supra*. See, also, *Baynor v. Warden, Maryland House of Correction*, 391 F. Supp. 1254 (D. Md. 1975) (involving denial of credit against life sentence, which by its very nature is indefinite).

[7] Given his life sentence and based on the foregoing, Deckard is not eligible for discharge from parole. Ultimately, "'There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'" *State v. Brand*, 219 Neb. 402, 406, 363 N.W.2d 516, 519 (1985). For the above reasons, there is no duty of the Board to provide a parole discharge date under the amended statutes. In the absence of such duty, the district court did not err when it denied Deckard's petition for mandamus.

## 4. Ex Post Facto

Deckard contends that the amended statute quoted above constitutes an ex post facto law and that the district court erred when it determined otherwise. We do not agree.

The district court rejected Deckard's ex post facto argument in its order that denied mandamus relief and reasoned as follows:

> "A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts." *State v. Amaya*, 298 Neb. 70, 78, 902 N.W.2d 675, 681 (2017). But the addition of the word "mandatory" to the Board's duties did not stiffen the punishment for the crime, did not affect the standards for fixing his initial parole eligibility date, did not affect the standards for determining his suitability for parole, or change his discharge date from parole. *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 507 (1995). It merely directs the Board which time of discharge it is required to determine and does not constitute an ex post facto law.

[8] We agree with the reasoning of the district court. The addition of the word "mandatory" in § 83-192(1)(c) (Cum. Supp. 2022) does not increase the punishment as applied to the calculation of Deckard's parole discharge. We are guided in our ex post facto analysis by the U.S. Supreme Court's observations in *Garner v. Jones*, 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). In *Garner*, the Court stated: "States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." 529 U.S. at 252. The U.S. Supreme Court further stated in *Garner*:

> [N]ot every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited. . . . The question is "a matter of 'degree.'" . . . The controlling inquiry . . . was whether retroactive application of the change in [the] law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes."

529 U.S. at 250 (quoting *California Dept. of Corrections v. Morales*, 514 U.S. 499, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995)). Insofar as Deckard as an individual sentenced to life had no absolute right to a parole discharge date under the statutes in effect in 1974, application of the 2018 statutes to Deckard would result in no risk of increased punishment and does not violate ex post facto principles.

In closing, we observe that Deckard could potentially become eligible for discharge upon commutation of his sentence by the Nebraska Board of Pardons and obtain a determinate sentence. See, *State ex rel. Hilgers v. Evnen*, 318 Neb. 803, 19 N.W.3d 244 (2025); *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016). However, as we have explained above, there is no ministerial duty of the Board to specify an end date for Deckard's parole based on his life sentence for second degree murder. Thus, the district court correctly rejected Deckard's ex post facto argument and denied the request for a writ of mandamus.

## 5. Other Relief

Deckard's remaining filings request records for communications exchanged in the 1990s and 2010s and are denied. Deckard's constitutional challenges were not presented below, and we do not consider them in this appeal. See *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024). All other relief not specifically addressed in this opinion is denied.

## VI. CONCLUSION

Deckard, who is serving a life sentence, failed to identify a clear ministerial duty of the Board to provide him with a mandatory parole discharge date. Accordingly, for the reasons set forth above, we affirm the order of the district court that dismissed his mandamus petition.

Affirmed.

Freudenberg, J., not participating.