Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/29/2026 11:06 PM CST

Perkins, L.L.C., a Nebraska limited liability company,
et al., appellants, v. RMR Building Group, LLC,
and Robert M. Ryan II, appellees.

___ N.W.3d ___

Filed January 23, 2026.    No. S-23-947.

1. **Corporations: Equity.** Piercing the corporate veil is an equitable remedy, not an action in itself.

2. **Equity: Appeal and Error.** In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.

4. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.

5. **Corporations.** A limited liability company's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears.

6. **Corporations: Fraud.** A court will disregard a limited liability company's identity only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.

7. **Corporations: Fraud: Liability: Proof.** A plaintiff seeking to impose liability on an individual member or manager has the burden of proving, by a preponderance of the evidence, that the limited liability

company's identity should be disregarded to prevent fraud or injustice to the plaintiff.

8. **Corporations: Fraud.** Some of the relevant factors in determining whether to disregard the corporate entity on the basis of fraud are (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

9. **Fraud.** The circumstances or factors to determine the existence of fraud are analogous to badges, signs, indicators, or indicia of fraud.

10. \_\_\_\_. Badges of fraud do not of themselves or per se constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative, not absolute.

11. **Fraud: Proof.** Badges of fraud are not usually conclusive proof; they are open to explanation. They may be almost conclusive, or they may furnish merely a reasonable inference of fraud, according to the weight to which they may be entitled from their intrinsic character and the special circumstances attending the case. Often, a single one of them may establish and stamp a transaction as fraudulent.

12. **Fraud: Evidence: Intent.** When several badges of fraud are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent.

13. **Corporations: Fraud: Words and Phrases.** The first factor for piercing the corporate veil on the basis of fraud is inadequate capitalization, which means capitalization very small in relation to the nature of the business of the corporation and the risks entailed.

14. **Corporations: Fraud: Time.** Inadequate capitalization is measured at the time of incorporation.

15. **Corporations: Fraud.** Undercapitalization presents a question of fact that turns on the nature of the business of the particular corporation.

16. **Corporations: Fraud: Proof.** Inadequate capitalization, by itself, is insufficient to prove fraud.

17. **Corporations: Words and Phrases: Appeal and Error.** In the limited context of determining whether to disregard a corporate entity, appellate courts have used the terms "grossly inadequate capitalization," "inadequate capitalization," and "undercapitalization" to refer to the same factual circumstance: capitalization very small in relation to the nature of the business of the corporation and the risks entailed.

18. **Corporations: Fraud.** The second factor for piercing the corporate veil on the basis of fraud is whether the corporation was insolvent at the time the debt was incurred.

19. **Corporations: Words and Phrases.** A corporation is insolvent if it is unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities of the corporation over its assets at a fair valuation.

20. **Corporations.** Whether a corporation is insolvent is usually a question of fact.

21. **Corporations: Fraud.** The third factor for piercing the corporate veil on the basis of fraud is evidence of a diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses.

22. **Corporations: Fraud: Liability.** When a principal shareholder appropriates and uses corporate funds and property for the shareholder's personal purposes and thereby defrauds and causes damages to creditors, the shareholder can be held individually liable for corporate debt.

23. **Corporations: Fraud.** The presence of a transaction where corporate funds or assets are diverted to the personal or improper use of a shareholder is not per se fraudulent, but may give rise to an inference of fraud.

24. ____: ____. The fourth factor for piercing the corporate veil on the basis of fraud is whether there is evidence that the corporation is a facade for the personal dealings of the shareholder and the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

25. **Corporations: Fraud: Debtors and Creditors.** The separate entity concept of the corporation may be disregarded where the corporation is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors.

26. **Breach of Contract.** Accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. A failure to observe any of these conditions is a breach of contract.

27. **Corporations.** Standing behind another's debts does not require that the corporate forms of the organizations be disregarded.

28. **Fraud: Proof.** A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the

intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.

29. **Conversion: Words and Phrases.** Conversion is any unauthorized or wrongful act of dominion exerted over another's property that deprives the owner of his property permanently or for an indefinite period of time.

30. **Conversion: Proof: Tort-feasors.** A plaintiff in conversion must show (1) an immediate right to possession of the property and (2) its wrongful possession by the tort-feasor.

Petition for further review from the Court of Appeals, PIRTLE, BISHOP, and ARTERBURN, Judges, on appeal thereto from the District Court for Douglas County, JEFFREY J. LUX, Judge. Judgment of Court of Appeals reversed and remanded with direction.

Steven G. Ranum and Josiah J. Shanks, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., and Robert F. Bartle, of Bartle & Geier, for appellants.

Michael J. Mullen for appellees.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

BERGEVIN, J.

# I. INTRODUCTION

This case comes before us on further review after the Nebraska Court of Appeals concluded that the corporate entity of RMR Building Group, LLC (RMR), should be disregarded—its company veil pierced. Accordingly, the Court of Appeals reversed in part the judgment of the district court and held RMR's manager and sole member, Robert M. Ryan II, jointly and severally liable for misappropriated construction cost funds. We reverse the decision of the Court of Appeals and remand the cause with direction to affirm the judgment of the district court.

## II. BACKGROUND

As mentioned above, Ryan was the manager and sole member of RMR, a general contractor for commercial properties. Michael Perkins is the sole owner of Perkins, L.L.C.; Perkins Properties, Inc.; and MHP Development, LLC. In this opinion, we will refer to these three companies collectively as "Perkins." Perkins hired RMR to redevelop a shopping center that Perkins owned in Omaha, Nebraska.

The parties' written contract provided for a "cost-plus" billing arrangement. Under the parties' arrangement, RMR would invoice Perkins in advance for the construction costs of the redevelopment. Perkins would pay RMR the invoiced amount, and RMR would then pay the subcontractors and suppliers from the funds Perkins provided for the construction costs. Each invoice would also include RMR's fee, which was calculated as 4½ percent of the invoiced construction costs. Thus, each invoice included an amount to pay for the construction costs, plus RMR's fee.

The parties' dispute centers on an invoice RMR submitted to Perkins that included an itemized cost for "HVAC equipment" of $526,236 and RMR's corresponding 4½-percent fee of $23,680.58. Perkins provided RMR with funds for the cost via a check, which RMR deposited into its "general operating" account.

At some point within the next 20 days, RMR's vice president, Dave Critser, informed Perkins that RMR had not yet paid for the HVAC equipment. Perkins responded with a formal request for proof of payment from RMR. After RMR failed to provide Perkins with proof of payment, Perkins notified RMR, through its attorney, that Perkins was terminating the parties' contract effective immediately.

Eventually, Perkins filed suit against RMR and Ryan. Perkins sought damages in the amount of the itemized HVAC equipment and RMR's corresponding fee under multiple theories of recovery: breach of contract, money had and received, unjust enrichment, conversion, and fraudulent misrepresentation.

Perkins also sought to disregard RMR's company entity to hold Ryan jointly and severally liable for the misappropriated funds.

## 1. Trial Evidence

At a bench trial, both parties relied upon the same five witnesses in support of their respective claims and defenses. In addition to evidence of the facts set forth above, the following evidence was adduced relevant to our resolution of this appeal on further review.

Critser began working for RMR in September or October 2019. Critser testified that at the "very beginning of RMR," Ryan went over budget on a project constructing a building for a relative (the Rezac project), and Ryan was responsible for the overage costs. Consequently, according to Critser, RMR was "struggling financially from the beginning." As a solution, RMR received a loan from that relative to pay the overage costs on the Rezac project. Critser and Ryan personally guaranteed that loan. The parties signed a promissory note in June 2020.

RMR's accountant testified that RMR did not have the ability to pay for the HVAC equipment, even though it had the money available at the "instant" that Perkins' check was deposited, because RMR spent the money on other obligations that were unrelated to Perkins' project. He explained that when RMR deposited Perkins' check, RMR had "quite a few" creditors seeking payment for other projects.

Ryan testified that the decision not to pay for the HVAC equipment with Perkins' funds was his decision "[b]y default," but he asserted that RMR did not intentionally fail to pay for the HVAC equipment. He explained that RMR used Perkins' funds to pay RMR's general operating expenses and various creditors unrelated to the Perkins project—whoever was "causing the most problems" at that particular time.

Evidence was adduced that showed after RMR deposited Perkins' funds into RMR's general operating account, RMR

made payments to creditors on debts for which Ryan was personally liable, such as the loan for the Rezac project, RMR office rental payments to a company in which Ryan owned a 50-percent interest, and payments to an individual for services related to a lawsuit in which RMR and Ryan were codefendants. Ryan also testified that RMR transferred approximately $97,244.94 from its general operating account to its payroll account.

Approximately 2 weeks after RMR failed to provide Perkins with proof of payment, Ryan decided to wind up RMR. Within 6 months, RMR had no employees. However, Ryan continued to pay himself a weekly salary of $1,000 for another 8 weeks. At the time of trial, RMR was administratively dissolved.

Michael Perkins, Critser, and an expert witness who owned a construction company all testified to the meaning of a cost-plus arrangement in the construction industry. Their testimony set forth that a cost-plus arrangement creates a relationship of trust between the general contractor and customer, that the items on a customer's invoice represent project-related bills that need to be paid, and that the general contractor will pay those bills with the corresponding funds the customer provides the general contractor. All three witnesses further testified that under a cost-plus arrangement, the customer's funds are not to be used to pay for non-project-specific related costs, and that to do so is a misappropriation of the customer's funds. Neither RMR nor Ryan disputed this evidence of the industry standard for cost-plus arrangements.

## 2. District Court's Judgment

In its judgment, the district court found that by failing to pay for the HVAC equipment and still receiving its related 4½-percent fee, RMR breached its contract with Perkins. It also found that RMR was liable under Perkins' claims for money had and received and unjust enrichment. The court further found that RMR did not commit conversion or fraudulent misrepresentation.

As for Ryan's liability, the court concluded that RMR's corporate entity should not be disregarded. The court reasoned that even though it was against the industry standards of a cost-plus arrangement for RMR to use the funds provided by Perkins for anything other than the purchase of the HVAC equipment, Ryan's decisions as to the use of Perkins' funds were "nothing more than a prioritization to pay other RMR obligations." The court considered the factors for disregarding a corporate entity that we set forth in *United States Nat. Bank of Omaha v. Rupe*[1] and concluded that they weighed against disregarding RMR's corporate entity.

The court also found that Perkins' claims against Ryan for conversion and fraudulent misrepresentation failed. It reasoned that Perkins' conversion claim failed because no evidence was adduced showing Ryan, personally, ever possessed the funds in question. It further reasoned that Perkins' fraudulent misrepresentation claim failed because Ryan was not personally connected to the preparation of the invoice, and thus, he did not make the allegedly fraudulent statement.

Perkins timely appealed.

### 3. Court of Appeals

On appeal, Perkins assigned, renumbered and restated, that the district court erred in (1) failing to pierce RMR's corporate veil to hold Ryan jointly and severally liable and (2) finding that Ryan did not commit conversion, fraudulent misrepresentation, or both. The Court of Appeals agreed that, considering the *Rupe* factors, RMR's corporate entity should have been disregarded, and it reversed the district court's judgment to hold Ryan jointly and severally liable.[2] Because the Court of Appeals determined that RMR's corporate veil should be pierced, it did not address Perkins' second assignment of

---

[1] *United States Nat. Bank of Omaha v. Rupe*, 207 Neb. 131, 296 N.W.2d 474 (1980).

[2] *Perkins v. RMD Building Group*, No. A-23-947, 2025 WL 973136 (Neb. App. Apr. 1, 2025) (unpublished memorandum opinion).

error concerning its claims for conversion and fraudulent misrepresentation.

Ryan timely petitioned for further review, which we granted.[3]

## III. ASSIGNMENTS OF ERROR

Ryan assigns, renumbered and restated, that the Court of Appeals erred by (1) applying a de novo standard of review without giving deference to the trial court, (2) piercing RMR's corporate veil and imposing personal liability upon Ryan for RMR's acts, and (3) finding Ryan jointly and severally liable with RMR for the amount RMR was found liable to Perkins.

## IV. STANDARD OF REVIEW

[1] The characterization of an action as at law or in equity is important for the purposes of the standard of review applied by an appellate court.[4] We have previously referred to proceedings seeking the disregard of a corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporate entity's debt or other obligation, as equitable actions.[5] However, piercing the corporate veil is an equitable remedy, not an action in itself.[6]

[2] At trial, the only issue concerning RMR's breach of the parties' contract was whether to disregard RMR's company entity. Accordingly, we treat that matter as one in equity.[7] In an appeal of an equity action, an appellate court tries factual

---

[3] See, generally, Neb. Ct. R. App. P. § 2-102(F) through (H) (rev. 2022).

[4] See *Nebraska Engineering Co. v. Gerstner*, 212 Neb. 440, 323 N.W.2d 84 (1982).

[5] See, *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008); *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995); *Global Credit Servs., Inc. v. AMISUB*, 244 Neb. 681, 508 N.W.2d 836 (1993); *Carpenter Paper Co. v. Lakin Meat Processors*, 231 Neb. 93, 435 N.W.2d 179 (1989); *Southern Lumber & Coal v. M. P. Olson Real Est.*, 229 Neb. 249, 426 N.W.2d 504 (1988); *J. L. Brock Bldrs., Inc. v. Dahlbeck*, 223 Neb. 493, 391 N.W.2d 110 (1986).

[6] See *Nebraska Engineering Co. v. Gerstner, supra* note 4.

[7] See *id.*

questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[8]

[3,4] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.[9] However, when an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.[10]

## V. ANALYSIS

We first address the issue of whether RMR's company entity should be disregarded. Because we conclude that it should not, we continue on to consider Perkins' assignment of error on appeal: that the district court erred in determining that Ryan did not commit fraudulent misrepresentation or conversion.

### 1. Piercing the Corporate Veil

#### (a) Disregarding Corporate Entities

Ryan assigns that the Court of Appeals erred in piercing RMR's corporate veil and imposing personal liability upon Ryan. We agree.

[5-7] A limited liability company's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears.[11] A court will disregard

---

[8] See *PSK v. Legacy Outdoor Advertising*, 318 Neb. 1, 13 N.W.3d 81, (2024).

[9] *Deckard v. Cotton*, 319 Neb. 615, 24 N.W.3d 335 (2025).

[10] *Boone River, LLC v. Miles*, 318 Neb. 760, 18 N.W.3d 802 (2025). See *Deckard v. Cotton, supra* note 9.

[11] *Thomas & Thomas Court Reports v. Switzer*, 283 Neb. 19, 810 N.W.2d 677 (2012). See, generally, Neb. Rev. Stat. § 21-129 (Reissue 2022).

a limited liability company's identity only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.[12] A plaintiff seeking to impose liability on an individual member or manager has the burden of proving, by a preponderance of the evidence, that the limited liability company's identity should be disregarded to prevent fraud or injustice to the plaintiff.[13]

[8,9] Some of the relevant factors in determining whether to disregard the corporate entity on the basis of fraud are (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.[14] These circumstances or factors to determine the existence of fraud are analogous to "badges, signs, indicators, or indicia of fraud," which we examined in *Gifford-Hill & Co. v. Stoller*.[15]

[10-12] According to *Gifford-Hil & Co.*:

""""[B]adges of fraud" . . . do not of themselves or per se constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative[,] not absolute. They are not usually conclusive proof; they are open to explanation. They may be almost conclusive, or they may furnish merely a reasonable inference of fraud, according to the weight to

---

[12] *Id.*

[13] See *id.*; *Christian v. Smith, supra* note 5.

[14] *Christian v. Smith, supra* note 5; *United States Nat. Bank of Omaha v. Rupe, supra* note 1.

[15] *Gifford-Hill & Co. v. Stoller*, 221 Neb. 757, 763, 380 N.W.2d 625, 630 (1986). See *J.L. Brock Bldrs., Inc. v. Dahlbeck, supra* note 5.

which they may be entitled from their intrinsic character and the special circumstances attending the case. Often[,] a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent . . . .'"[16]

We next address each of the relevant factors that we set forth in *Rupe*.

### (i) Inadequate Capitalization

[13-16] The first factor for piercing the corporate veil on the basis of fraud is inadequate capitalization, which means capitalization very small in relation to the nature of the business of the corporation and the risks entailed.[17] Inadequate capitalization is measured at the time of incorporation.[18] A corporation that was adequately capitalized when it was formed but has suffered losses is not necessarily undercapitalized.[19] Undercapitalization presents a question of fact that turns on the nature of the business of the particular corporation.[20] Inadequate capitalization, by itself, is insufficient to prove fraud.[21]

The district court found no evidence was adduced that showed RMR was undercapitalized. However, the Court of Appeals disagreed. It pointed to RMR's "immediate situation"[22] of being over budget on the Rezac project, which, according to Critser, preexisted the formation of RMR. The Court of Appeals found that RMR was undercapitalized.

---

[16] *Gifford-Hill & Co. v. Stoller, supra* note 15, 221 at 763, 380 N.W.2d at 630 (quoting *Montana Nat. Bank v. Michels*, 193 Mont. 295, 631 P.2d 1260 (1981)).

[17] *Christian v. Smith, supra* note 5.

[18] *Id.*

[19] See *id.*

[20] *Id.*

[21] *J. L. Brock Bldrs, Inc. v. Dahlbeck, supra* note 5.

[22] *Perkins v. RMD Building Group, supra* note 2, 2025 WL 973136 at *9.

On further review, Ryan first takes issue with the level of inadequate capitalization necessary to disregard a corporate entity. He contends that the correct standard is whether an entity was "grossly" undercapitalized and not merely "undercapitalized." Ryan asserts that the Court of Appeals erroneously applied this lesser standard on appeal. We disagree.

[17] We have previously used the terms "grossly inadequate capitalization" and "inadequate capitalization" interchangeably to describe the first factor to determine whether to pierce the corporate veil on the basis of fraud.[23] We have also used the term "undercapitalization" for the same purpose.[24] In the limited context of determining whether to disregard a corporate entity, we have used these three terms to refer to the same factual circumstance: capitalization very small in relation to the nature of the business of the corporation and the risks entailed.

As for that circumstance in the instant case, Ryan argues that the Court of Appeals erred in finding that RMR was undercapitalized because "[t]here was no evidence at all with respect to the capitalization of RMR at the time of formation."[25] Conversely, Perkins argues that the Court of Appeals correctly found that RMR was undercapitalized at its formation based on Critser's testimony that RMR was "struggling financially from the beginning."

We disagree with the Court of Appeals that the evidence showed RMR was undercapitalized at its formation. Although the evidence shows that Ryan went over budget on the Rezac project and that RMR had to take out a loan to continue operating in June 2020, there is no evidence in the record indicating when RMR was formed, which is the point at which capitalization is measured. Without evidence of when RMR was

---

[23] See, e.g., *Christian v. Smith, supra* note 5; *J. L. Brock Bldrs., Inc. v. Dahlbeck, supra* note 5.

[24] *Id.*

[25] Brief for appellee in support of petition for further review at 7.

formed, whether RMR's capitalization was grossly inadequate at the time of its formation cannot be determined.

### (ii) Insolvency

[18-20] The second factor for piercing the corporate veil on the basis of fraud is whether the corporation was insolvent at the time the debt was incurred.[26] A corporation is insolvent if it is unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities of the corporation over its assets at a fair valuation.[27] Whether a corporation is insolvent is usually a question of fact.[28]

Reviewing Ryan's argument on further review, we determine he does not contest that RMR was insolvent at the time the debt was incurred. He concedes that RMR could not pay its debts as they became due. Instead, he argues that RMR's insolvency does not, by itself, establish the basis of fraud to disregard RMR's company entity.

Here, the evidence established that RMR was unable to pay its debts as they became due in the usual course of its business—the very definition of insolvency. We agree with the Court of Appeals' finding that RMR was insolvent at the time it incurred the debt and that this factor weighs in favor of piercing RMR's company veil.

### (iii) Diversion of Funds or Assets

[21-23] The third factor for piercing the corporate veil on the basis of fraud is evidence of a diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses.[29] When a principal shareholder appropriates and uses corporate funds and property for the shareholder's personal purposes and thereby defrauds and causes

---

[26] *Christian v. Smith, supra* note 5.

[27] *Id.*

[28] *Id.*

[29] *Id.*

damages to creditors, the shareholder can be held individu-
ally liable for corporate debt.[30] The presence of a transaction
where corporate funds or assets are diverted to the personal
or improper use of a shareholder is not per se fraudulent, but
may give rise to an inference of fraud.[31]

The district court found that Ryan did not divert assets of
RMR for an improper or personal use because the evidence
did not show that Ryan absconded with any funds, that Ryan's
salary was "exorbitant," or that the debts paid by RMR were
illegitimate debts of RMR. The district court specifically
found that Ryan's "election to use Perkins' funds for other
RMR purposes, while in contravention of industry standards
regarding a cost[-]plus arrangement, was nothing more than a
prioritization to pay other RMR obligations."

The Court of Appeals disagreed and found that even though
RMR did not use all of the funds provided by Perkins for per-
sonal or improper uses, some uses were for Ryan's personal
benefit, which caused this factor to weigh in favor of piercing
RMR's company veil.

On further review, Ryan argues that the district court was
correct in finding that RMR made no improper payments. He
maintains that all of the payments RMR made after receiving
Perkins' funds were for proper business purposes. Ryan con-
tends that the fact he personally guaranteed RMR's company
debts fails to establish a fraudulent intent behind the payments
because, as he asserts, it is customary for business debts to be
guaranteed by an owner.

Perkins argues that Ryan's decision not to pay for the
HVAC equipment on Perkins' project and instead use those
funds to pay off RMR's debts that he personally guaranteed
demonstrates an improper use of funds. Perkins also contends
that because the industry custom is to use funds provided by
the customer to pay only project-related costs, Ryan's decision

---

[30] *Id.*

[31] See *J. L. Brock Bldrs., Inc. v. Dahlbeck, supra* note 5.

to not pay for the HVAC equipment is factually distinct from "any ordinary business failure."[32]

We disagree with the Court of Appeals' finding that Ryan diverted RMR funds for a personal or improper use. The record shows that Ryan never made any such diversions. After RMR deposited the funds provided by Perkins into its general operating account, the funds remained there until they were used to pay for RMR's legitimate business expenses. Ryan's direction to RMR to use its funds for legitimate business expenses did not constitute a diversion of funds for Ryan's personal use or for an improper purpose.

### *(iv) Facade*

[24,25] The fourth factor for piercing the corporate veil on the basis of fraud is whether there is evidence that the corporation is a facade for the personal dealings of the shareholder and the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.[33] The separate entity concept of the corporation may be disregarded where the corporation is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors.[34]

The district court found that no evidence was adduced that showed RMR was a mere facade for Ryan's personal dealings. The Court of Appeals agreed. Neither party addresses this factor on further review.

We too agree that there is no evidence in the record that shows RMR was a shell corporation with no legitimate business purpose. The record shows that RMR contracted with clients to serve as a general contractor for construction projects, hired employees to work those projects, paid salaries to

---

[32] Brief for appellants in response to petition for further review at 4.

[33] *407 N 117 Street v. Harper*, 314 Neb. 843, 993 N.W.2d 462 (2023) (citing *Christian v. Smith, supra* note 5).

[34] *Christian v. Smith, supra* note 5.

those employees, and attempted to make a profit. RMR was not a facade for Ryan's personal dealings, and its operations were not carried on in disregard of its company entity.

*(v) Disregarding RMR's Company Entity*

[26] RMR breached its contract with Perkins, but that is not enough to make Ryan personally liable. Under the parties' contract, RMR was obligated to use the funds provided by Perkins to pay off project-related costs. "'[A]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. [A] failure to observe any of these conditions is a . . . breach of contract.'"[35] RMR breached this duty when it used the funds Perkins provided to pay off debts unrelated to the Perkins project instead of purchasing the HVAC equipment for which it invoiced Perkins. Notwithstanding RMR's breach of contract, the *Rupe* factors do not establish that RMR's company veil should be pierced.[36]

In our analysis of RMR's alleged fraudulent conduct under the *Rupe* factors, only one such factor weighs in favor of piercing RMR's company veil: RMR's insolvency.[37] Because the circumstances or factors to determine the existence of fraud are not usually conclusive proof, but open to explanation,[38] we keep in mind Ryan's explanation for these circumstances when considering the factors present in RMR's case.

Ryan claimed that it was not RMR's insolvency that resulted in its failure to pay for the HVAC equipment; rather, it was RMR's failure to obtain an increase in its line of credit from its bank. This explanation adequately repels the inference of

---

[35] *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 850, 606 N.W.2d 85, 91 (2000) (quoting *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984)).

[36] See *United States Nat. Bank of Omaha v. Rupe, supra* note 1.

[37] See *id*.

[38] See *J. L. Brock Bldrs., Inc. v. Dahlbeck, supra* note 5.

fraud that RMR's insolvency raised, and warrants the conclusion that RMR was not used to perpetrate a fraud or other unjust act.

[27] The fact that Ryan personally guaranteed some of the business debts that were paid off with the funds does not, by itself, establish that his conduct was fraudulent. Standing behind another's debts does not require that the corporate forms of the organizations be disregarded.[39] Because the record does not establish by a preponderance of the evidence that Ryan used RMR to perpetrate a fraud or other wrong, RMR's company entity should not be disregarded. Business owners are afforded a certain degree of security against personal liability when they form a limited liability company.[40] RMR's insolvency in this case does not outweigh these protections.

Having found RMR's company entity should not be disregarded, we do not consider Ryan's third assignment of error.

## 2. Personal Liability for Tortious Acts

The district court found that Perkins' claims were without merit. On appeal from the district court, Perkins' assignments of error included that the district court erred in determining (1) that Ryan did not commit fraudulent misrepresentation and (2) that Ryan did not commit conversion. The Court of Appeals, having found Ryan personally liable under a veil-piercing theory, did not rule on these issues. Because we find Ryan is not personally liable under a veil-piercing theory, we consider Perkins' tort claims in turn.

### (a) Fraudulent Misrepresentation

[28] A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly

---

[39] *Global Credit Servs., Inc. v. AMISUB, supra* note 5.

[40] See § 21-129.

without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.[41]

The district court found that Perkins' fraudulent misrepresentation claim failed for two reasons: (1) The allegation of fraud was directly tied to RMR's obligations in its agreement with Perkins, and (2) the evidence established Ryan did not participate in preparing the invoice. Therefore, it concluded that a fraudulent misrepresentation claim against Ryan was improper.

Perkins argues that Ryan represented to Perkins, through RMR's invoice, that RMR would pay for the HVAC equipment, that Perkins relied on RMR's representation by providing RMR with the necessary funds, that RMR defied this representation when it used the funds Perkins provided for other purposes, and that Perkins suffered damage as a result. In defense, Ryan argues, as the district court found, that the evidence shows Critser was the RMR representative who prepared the invoice that was sent to Perkins and that Ryan "had no role in these actions."[42]

We agree with the district court that Perkins' claim of fraudulent misrepresentation fails. Here, the evidence is insufficient to prove Ryan possessed the necessary fraudulent intent to satisfy the third element of a fraudulent misrepresentation claim. The evidence is insufficient to find that Ryan, in his personal capacity, authorized RMR to send its invoice to Perkins while knowingly or recklessly disregarding the truth that RMR would not pay for the HVAC equipment with Perkins' funds.

The evidence adduced at trial showed that Ryan was not involved in creating the invoice or sending it to Perkins. It was Critser who prepared the invoices sent to RMR's customers.

[41] *Brauer v. Hartmann*, 313 Neb. 957, 987 N.W.2d 604 (2023).

[42] Brief for appellees at 15.

Additionally, Ryan played no role in fielding invoices for construction costs from subcontractors and suppliers. These facts alone fail to sufficiently connect Ryan to the representation in the invoice. Because the source of the alleged fraudulent misrepresentation must be Ryan to support Perkins' claim against him, and the record fails to include evidence even suggesting Ryan made the representation, the evidence is insufficient to support a finding that Ryan made a misrepresentation. The findings of the district court are not clearly erroneous. As such, we will not disturb them.

### (b) Conversion

[29,30] Conversion is any unauthorized or wrongful act of dominion exerted over another's property that deprives the owner of his property permanently or for an indefinite period of time.[43] A plaintiff in conversion must show (1) an immediate right to possession of the property and (2) its wrongful possession by the tort-feasor.[44]

Perkins argues that Ryan committed conversion when RMR used the funds Perkins provided for purposes other than paying for the HVAC equipment because such actions went against industry standards. Perkins contends that even though the funds were in RMR's possession, they were still "in essence" Perkins' funds.[45] Ryan argues that Perkins failed to prove that it had an immediate right to the money that was allegedly converted or that Ryan personally possessed the funds.

We agree with the district court that Perkins does not have a successful conversion claim against Ryan as an individual tort-feasor because Perkins did not have an immediate right to possession of the money it provided RMR. Perkins provided funds to RMR with the expectation that RMR would use the

---

[43] See *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013).

[44] *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992).

[45] Brief for appellants at 21.

funds for the costs itemized on the invoice it sent Perkins. When Perkins provided RMR with those funds, Perkins no longer had an immediate right to its possession. Because the district court's findings concerning this issue are not clearly erroneous, we will not disturb them.

## VI. CONCLUSION

Having reviewed the briefs and record and having heard oral arguments, on further review, we conclude the relevant factors for determining whether to pierce the company veil on the basis of fraud do not establish by a preponderance of the evidence that RMR's company entity should be disregarded, and Perkins' claims of fraud and conversion against Ryan fail. Accordingly, we reverse the decision of the Court of Appeals and remand the cause with direction to affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.

MILLER-LERMAN, J., not participating in the decision.